IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONALD SOUSA,

       Plaintiff,

vs.                                            No. CIV 23-0811 JB/JFR

CHIPOTLE SERVICES, LLC,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Summary Judgment and Supporting Memorandum of Law, filed June 17, 2024 (Doc. 64)("Motion"); (ii) the Defendant's Opposed Motion to Amend Supplemental Scheduling Order, filed May 28, 2024 (Doc. 55)("Scheduling Motion"); and (iii) the Plaintiff's Motion to Compel Discovery and Extend Discovery Deadline to Conduct Limited Discovery, filed June 7, 2024 (Doc. 60)("Discovery Motion").  The Court held hearings on June 26, 2024, <u>see</u> Clerk's Minutes at 1, filed June 26, 2024 (Doc. 70)("June Minutes"), and on October 24, 2024, <u>see</u> Clerk's Minutes at 1, filed October 24, 2024 (Doc. 84)("October Minutes").  The primary issues are (i) whether Defendant Chipotle Services, LLC ("Chipotle Services") is entitled to summary judgment, pursuant to rule 56 of the Federal Rules of Civil Procedure, on Plaintiff Donald Sousa's claim that Chipotle Services discriminated against him on the basis of age, in violation of the New Mexico Human Rights Act, NMSA § 28-1-7(A) ("NMHRA"), when Chipotle Services fires him and replaces him with a younger employee; (ii) whether the Court should amend the Supplemental Scheduling Order, filed May 17, 2024 (Doc. 52); and (iii) whether the Court should permit Sousa to depose Edwin Sanchez and order Chipotle Services to produce records regarding the pest sightings at Sanchez' stores in

2021 and 2022.  After reviewing the applicable law and relevant facts, the Court: (i) grants the

Motion, because Sousa has not met his burden to show that Chipotle Services' reason for firing

Sousa is pretextual by pointing to record evidence showing "'weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons'"

for firing Sousa,  Kelley v. City of Albuquerque, 375 F.Supp.2d 1183, 1211 (D.N.M.

2004)(Browning, J.)(quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)); see

Juneau v. Intel Corp., 2006-NMSC-002, 139 N.M. 12, 127 P.3d 548; (ii) denies the Scheduling

Motion; and (iii) denies the Discovery Motion.

## FACTUAL BACKGROUND

The Court draws the factual background from the parties' assertions of undisputed material

fact in their briefs.  See Motion at 2-11; Plaintiff's Response in Opposition to Defendant's Motion

for Summary Judgment, filed July 24, 2024 (Doc. 73)("Response");[1] Defendant's Reply in Further

---

[1]Concerning the procedural rules that govern the non-movant's submission of a response
to a summary judgment motion, D.N.M.LR-Civ. 56.1(b) provides:

> The response must contain a concise statement of the material facts cited by
> the movant as to which the non-movant contends a genuine issue does exist.  Each
> fact in dispute must be numbered, must refer with particularity to those portions of
> the record upon which the non-movant relies, and must state the number of the
> movant's fact that is disputed.  All material facts set forth in the Memorandum will
> be deemed undisputed unless specifically controverted. The response may set forth
> additional facts other than those which respond to the Memorandum which the non-
> movant contends are material to the resolution of the motion.  Each additional fact
> must be lettered and must refer with particularity to those portions of the record
> upon which the non-movant relies.

D.N.M.LR-Civ. 56.1(b).  Sousa's Response does not always properly classify each additional fact
in a lettered order, nor does he always properly reference the respective letter of each of the
Motion's facts that he disputes, as D.N.M.LR-Civ. 56.1(b) requires.  The Court will not, however,
disregard Sousa's otherwise sound positions in his responses on procedural grounds.  See Tapia v.
City of Albuquerque, 10 F. Supp. 3d 1207, 1252 (D.N.M. 2014)(Browning, J.)(citations

Support of its Motion for Summary Judgment, filed September 27, 2024 (Doc. 80)("Reply").   The

Court states the undisputed material facts in the text.  The Court specifically discusses facts that

are purportedly disputed or actually disputed in the footnotes.

    **1.**      **<u>Chipotle Services' Hiring and Cleanliness Policies</u>.**

"Chipotle Mexican Grill, Inc., owns and operates 'fast casual' restaurants throughout the

United States, Canada, and Europe that serve a focused menu of Mexican fare, consisting primarily

of burritos, tacos, and salads."   Motion at 2 (asserting this fact)(citing Declaration of Patrick

Hannan ¶ 5, at 1, dated June 14, 2024, filed June 17, 2024 (Doc. 64-1)("Hannan Decl.")).   <u>See</u>

Response at 7 (stating that Plaintiff does not dispute this fact); Hannan Decl. ¶ 5, at 1.[2]  Chipotle

Mexican Grill does not employ its restaurants' employees; rather, Chipotle Services, LLC, the

Defendant, employs the restaurants' employees.   <u>See</u> Motion at 2 (asserting this fact)(citing

Hannan Decl. ¶ 4, at 1); Response at 7 (stating the Plaintiff does not dispute this fact); Hannan

Decl. ¶ 4, at 1.   "Chipotle is an equal opportunity employer and is committed to ensuring that its

workplace is free from any form of discrimination, harassment, and retaliation.   Chipotle

maintains, and regularly updates, various Equal Employment Opportunity, anti-discrimination,

anti-harassment, and anti-retaliation policies," which, collectively, it refers to as its "Respectful

Workplace Policy"; it features prominently these policies in its employee handbooks and on

posters in employee areas of its restaurants.   Motion at 2 (asserting this fact)(citing Chipotle

---

omitted)("[T]he Court . . . generally does not grant dispositive motions on procedural defaults
alone.").

    [2]For clarification and consistency, when citing briefs, exhibits, or other documents filed in
the CM/ECF system, the Court cites to the page numbers that the CM/ECF system places on the
upper, right-hand corner of the documents.

Mexican Grill, Restaurant Management Handbook at 3 (2017), filed June 17, 2024 (Doc. 64-3)("Restaurant Handbook")).  <u>See</u> Restaurant Handbook at 3 (no citation for quoted material).[3]
The Restaurant Handbook details "how an employee can report behavior he or she feels is discriminatory or harassing"; Chipotle Services, moreover, encourages its employees to "communicate with any manager, supervisor, or regional human resource employee regarding their concerns," and also encourages them to "contact the toll-free Confidential Respectful Workplace Hotline at any time or on any day.  Retaliation for such a report is explicitly prohibited."  Motion at 3 (asserting this fact)(citing Restaurant Handbook at 3-5).  <u>See</u> Restaurant Handbook at 3-5.[4]
Sousa "never reported any conduct that he believed violated Chipotle's Respectful Workplace Policy until after" Chipotle Services fired him.  Motion at 3 (asserting this fact)(citing Deposition of Donald Sousa at 66:22-25, taken January 31, 2024, filed June 17, 2024 (Doc. 64-2)("Sousa

----

[3]Sousa contends that this fact is immaterial.  <u>See</u> Response at 7.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  <u>See</u> <u>Lowery v. City of Albuquerque</u>, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  <u>See</u> <u>Walton v. N.M. State Land Off.</u>, 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").  Accordingly, the Court deems this fact undisputed.

[4]Sousa contends that this fact is immaterial.  <u>See</u> Response at 7.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  <u>See</u> <u>Lowery v. City of Albuquerque</u>, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  <u>See</u> <u>Walton v. N.M. State Land Off.</u>, 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").  Accordingly, the deems this fact undisputed.

Depo.")).  See Sousa Depo at 66:22-25.[5]

Chipotle Services is committed to food safety and cleanliness.  See Motion at 3 (asserting this fact)(citing Sousa Depo. at 28:3-9); Response at 7 (stating that Plaintiff does not dispute this fact);[6] Sousa Depo. at 28:3-9.  Chipotle Services requires all of its employees to comply with its food-safety programs and practices, including Chipotle's Critical Control Points policy, Illness Policy, Handwashing Policy, and Food Safety Seven Policy.  See Motion at 3 (asserting this fact)(citing Hannan Decl. ¶ 6, at 1); Response at 8 (stating that Plaintiff does not dispute this fact); Hannan Decl. ¶ 6, at 1.  "Failure to comply with any of Chipotle's food safety programs and practices is grounds for discipline, including termination."  Motion at 3 (asserting this fact)(citing Hannan Decl. ¶ 6 at 1).[7]  See Hannan Decl. ¶ 6 at 1.  Sousa "understood and was aware that he

---

[5]Sousa contends that this fact is immaterial.  See Response at 7.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").  Accordingly, the Court deems this fact undisputed.

[6]Sousa purports to dispute this fact's implication that "all of Chipotle's employees are also committed to food safety and cleanliness."  Response at 7.  This is not a genuine factual dispute, because disputing a fact's implication does not dispute the fact.  See Harjo v. City of Albuquerque, 326 F.Supp. 3d 1145, 1163 n.25 (D.N.M. 2018)(Browning, J.)("There is no factual dispute, because disputing an implication from a fact does not dispute the fact.").  The purported implication to which Sousa objects bears on the fact's materiality, which the Court will consider in the Analysis Section.

[7]Sousa purports to dispute this fact, stating: "The assertions of UMF NO. 8 are unsupported by the materials upon which they purportedly rely."  Response at 8.  In support of this fact, the Motion cites to the Hannan Decl., which states that:

could be fired for the failure to abide by Chipotle's food safety and cleanliness policies." Motion

at 3 (asserting this fact)(citing Sousa Depo. at 27:21-18; and id. at 102:5-11). See Sousa Depo. at

27:21-18; id. at 102:5-11.[8]

---

> the Multistate Employee Handbooks requires employees to comply with
> Chipotle's food safety programs and practices, including, but not limited to,
> Chipotle's Critical Control Points, Illness Policy, Handwashing Policy, and
> Food Safety Seven. The Handbook confirms that failure to comply with these
> policies may result in disciplinary action, up to and including termination.

Hannan Decl.¶ 6 at 1. Because Sousa does not offer any evidence that the Multistate Employee
Handbook does not state that failure to comply with Chipotle Services' food-safety programs may
result in disciplinary action up to and including termination, the Court deems the fact in the text
undisputed.

[8]Sousa purports to dispute this fact. See Response at 8 (stating that Chipotle Services'
"assertions are wholly unsupported by the materials on which they purportedly rely."). Chipotle
Services asserts that Sousa "understood and was aware that he could be fired for the failure to
abide by Chipotle's food safety and cleanliness policies." Motion at 3 (asserting this fact).
Chipotle Services, in support of its assertion, cites to two excerpts from the Sousa Depo, 27:21-
28:125 [sic] and 102:5-12:11. See Motion at 3. In the first excerpt, Sousa testifies that he agrees
that ensuring "we are serving safe and delicious food in a clean, organized and welcoming
environment" is a Chipotle Services' field leader's responsibility. Sousa Depo. at 27:21-28:9. He
also testifies that he agrees that food safety and cleanliness of Chipotle restaurants is a high
propriety for Chipotle Services. See Sousa Depo. at 27:21-28:9. In the second excerpt, Sousa
testifies:

> Q:    Are you aware of any other field leaders who were ever terminated for
>       failure to maintain cleanliness or food safety standards at Chipotle?
>
> A:    Yes.
>
> Q:    Who are you aware of who was fired for failing to maintain those
>       conditions?
>
> A:    Tiffany Rodriguez.
>
> Q:    Okay. Do you know specifically why Tiffany was fired?
>
> A:    Not specifically.

2.     **Facts Regarding Pest Problems in the Restaurant Industry**.

"Pest problems are common in the restaurant industry."  Response at 7 (asserting this fact)(citing Hannan Depo. at 52:8-10; Sousa Decl.; Amy Decl.; and July 11, 2024, Amy Email).  See Sousa Decl. ¶ 3, at 2.[9]  "Pest issues can occur under varying situations."  Reply at 15 (asserting

---

Q:     Were you aware it was also for failing to address a cockroach infestation?

A:     I didn't think it was cockroaches, no.

Q:     Or a pest -- did you think it -- did you know it was a pest infestation?

A:     Vaguely.

Q:     Are you aware of any field leaders who were ever not fired after having a pest infestation come up and having failed to correct it for two months?

A:     I am not aware.

Sousa Deposition at 17.  Sousa, in support of his position, states that: "Plaintiff understood that many other employees and Field Leaders, who were much younger than Plaintiff, violated Chipotle's food safety and cleanliness policies, yet they were not even disciplined, much less fired."  Response at 8 (citing Declaration of Tiffany Rodriguez ¶¶1-5, at 1, dated July 21, 2024, filed July 24, 2024 (Doc. 73-6)("Rodriguez Decl."); Declaration of Joshua Amy, dated July 22, 2024, filed July 24, 2024 (Doc. 73-10)("Amy Decl."); Email from Joshua Amy to teamspusa@aol.com (July 11, 2024 12:23 p.m.)(Doc. 73-12)("Amy Email")); and Orkin Service Ticket (dated Mach 3, 2022), filed July 24, 2024 (Doc. 73-13)).  Sousa does not provide pin cites for his citations to evidence in the record, and his citations do not conflict with the Sousa Depo.'s testimony, which demonstrates that because Sousa was aware of other field leaders who had been fired because of their food-safety-compliance failures, he understood that Chipotle Services could fire him, too, for similar food-safety compliance failures.  Accordingly, the Court deems this fact undisputed.

[9]Chipotle Services purports to dispute this fact, stating:

Chipotle objects to the first sentence in ¶ 2 because it is not supported by the cited, or any other, record evidence.  Further, Chipotle objects on the ground that the fact is vague and misleading as written.  While a pest sighting may not be unusual, a pest infestation certainly is.

Reply at 14 (citing Hannan Depo. at 52:8-10; 46:25-48:12).  Sousa, in support of his assertion,

cites to the Hannan Depo. at 52:8-10, in which Hannan testifies that he agrees that pest sightings are common in his industry.  See Hannan Depo. at 52:8-10.  Sousa also cites to the Sousa Decl., which states that pest problems are common in the restaurant industry.  See Sousa Decl. ¶ 3, at 1. Finally, Sousa cites to the July 11, 2024, Amy Email, which states that there were pest issues at "all of their locations."  July 11, 2024, Amy Email at 2.  Chipotle Services, in support of its position, cites to the same excerpt of the Hannan Depo, as well as to an additional excerpt, in which Hannan testifies:

> Q:    Okay.  What is your definition of when it's a problem versus when it's not?
>
> A:    When it's sighted more than once.
>
> Q:    And what do you mean by "sighted more than once"?
>
> A:    When you see a pest more than one time.
>
> Q:    Okay.  Explain that do me.  So if you see a pest in a store, you're saying it if -- how soon after does it have to be seen again for it to be a problem?
>
> A:    There's not a period of time.
>
> Q:    All right. If you go to a store and you see it has cockroaches in January, and you come back in February and there's cockroaches still, is that a problem?
>
> A:    Yes.
>
> Q:    What if you come back in March and there's still cockroaches, is that a problem?
>
> A:    Yes.
>
> Q:    What about in April, is it still a problem?
>
> A:    Yes.
>
> Q:    May?
>
> A:    Yes.
>
> Q:    Still a problem in June?

this fact)(citing Amy Depo. at 33:10-16; 36:7-21).  See Amy Depo. at 33:10-16; id. at 36:7-21.[10]

"Specifically, a pest problem can arise when a store is dirty, as the dirty conditions of the store can

attract pests."  Reply at 15 (asserting this fact)(citing Amy Depo. at 33:17-20).  See Amy Depo. at

_____

| | |
|---|---|
| A: | Yes. |
| Q: | July? |
| A: | Yes. |
| Q: | So seven months after the initial seeing of a cockroach it's still a problem if you haven't gotten rid of it completely by July of that same year? |
| A: | There are mitigating factors to that answer. |
| Q: | And what are they? |
| A: | It depends on what that field leader and the general manager did about the sighting initially and going forward. |

Hannan Depo. at 46:25-48:12.  The Sousa Decl.'s statement that pest problems are common in the restaurant industry supports his assertion, but it conflicts with Hannan's testimony.  Hannan states that pest sightings, not problems, are common in the restaurant industry; moreover, in the evidence to which Chipotle Services cites, Hannan does not state whether pest problems -- which he defines as instances when a pest is sighted more than once -- are common in the restaurant industry.  See Hannan Depo. at 46:24-48:12.  "On a summary judgment motion, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party."  O'Farrell v. Bd. of Comm'rs for Cnty. of Bernalillo, 455 F.Supp.3d 1172,1182 n.10 (D.N.M. 2020)(Browning, J.)(first citing Hunt v. Cromaertie, 526 U.S. 541, 550-55 (1999); and then citing Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)).  Accordingly, the Court includes Sousa's assertion in the text as an undisputed fact for this opinion's purposes.

    [10] Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

33:17-20.[11]  "A pest sighting or infestation can arise due to a structural problem, such as a hole in

the wall or a crack under a door."  Reply at 15 (asserting this fact)(citing Amy Depo. at 33:10-16;

id. at 90:20-91:4).  See Amy Depo. at 33:10-16; id. at 90:20-91:4.[12]  "Pests can also be drawn in

by bait placed by exterminators or other pest professionals."  Reply at 15 (asserting this fact)(citing

Amy Depo. at 36:7-21).  See Amy Depo. at 36:7-21.[13]

3.    **Sousa Begins to Work for Chipotle Services and Reports to Team Director Patrick Hannan.**

Chipotle Services hired Sousa on June 3, 2019, as a Field Leader; Chipotle Services Field

Leaders supervise "patches" of around six to ten Chipotle Services restaurants, and they report to

a Team Director.  See Motion at 4 (asserting this fact)(citing Sousa Depo. at 25:1-16; and id. at

32:6-33:3); Response at 8 (stating that Sousa does not dispute this fact); Sousa Depo. at 25:1-16;

id. at 32:6-33:3. Chipotle Services' Field Leaders' responsibilities include "building a bench of

great managers, protecting the integrity of Chipotle's training systems, validating standards and

systems in the restaurants, ensuring teams are delivering a safe food environment and excellent

---

[11] Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[12] Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[13] Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

guest experience, and achieving the annual sales and cash flow plans."  Motion at 4 (asserting this

fact)(citing Sousa Depo. at 27:7-28:2; and Field Leader Position Overview, Chipotle Mexican Grill

at 2 (dated January 2018), filed June 17, 2024 (Doc. 64-6) ("Field Leader Overview")).  See

Response at 9 (stating that Sousa does not dispute this fact); Sousa Depo. at 27:7-28:2; Field

Leader at 2.  "Ensuring food safety and cleanliness standards are being met is one of Chipotle

[Services'] highest priorities."  Motion at 4 (asserting this fact)(citing Sousa Depo. at 28:3-28:9).

See Sousa Depo. at 28:3-28:9.[14]

Before Chipotle Services hired Sousa, Sousa had worked in the restaurant industry for over

thirty-five years.  See Response at 2 (asserting this fact); Sousa Decl. ¶ 2, at 1.[15]  When Chipotle

Services hired Sousa, Sousa was approximately fifty-four years old.  See Motion at 4 (asserting

this fact); Response at 8 (stating that Sousa does not dispute this fact).[16]  Sousa's responsibilities

___

[14]Sousa purports to dispute this fact, but only "in so far [sic] as it states that Chipotle has high food safety and cleanliness standards." Response at 9.  In support of Sousa's position, he states: "Plaintiff disputes that Mr. Hannan maintains the same cleanliness standards for his younger employees."  Response at 9.  Sousa's statement does not address directly Chipotle Services' assertion, and it does not cite to competent evidence that conflicts with Chipotle Services' assertion.  Accordingly, the Court deems this fact undisputed.

[15]Chipotle Services purports to dispute this fact on the grounds that it is immaterial.  See Reply at 11.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").  Accordingly, the Court deems this fact undisputed.

[16]While the cited record materials do not state Sousa's age when Chipotle hired him, because neither party disputes the assertion that he was approximately fifty-four years old, and it is correct, the Court deems it true.

- 11 -

as a Field Leader include overseeing nine Chipotle Services restaurants in New Mexico, including restaurants in Albuquerque, Santa Fe and Farmington. See Response at 2-3 (asserting this fact)(citing Sousa Decl.); Sousa Decl. ¶ 4, at 2.[17] Chipotle Services Field Leaders do not work in their restaurants on a daily basis; rather, they provide oversight to the general managers, and they conduct site visits periodically throughout each month. See Response at 3 (asserting this fact)(citing Sousa Decl.); Sousa Decl. ¶ 4, at 2.[18] Beginning in April of 2021 through his termination, Sousa reported to Patrick Hannan, a Team Director at Chipotle Services. See Motion at 4 (asserting this fact)(citing Sousa Depo. at 32:6-33:3); Response at 8 (stating that Sousa does not dispute this fact); Sousa Depo. at 32:6-33:3. At the time that Chipotle Services hired Sousa, Hannan was forty-eight years old, only slightly younger than Sousa. See Motion at 4 (asserting this fact)(citing Hannan Decl. ¶ 1, at 1.); Response at 8 (stating that Sousa "does not dispute that

---

[17]Chipotle Services' Reply does not mention, contradict, address, or otherwise respond to this fact; accordingly, the Court deems this fact undisputed. See D.N.M.L.R.-Civ. 56.1 ("All material facts set forth in the response will be deemed undisputed unless specifically controverted.").

[18]Chipotle Services disputes this fact, stating that it lacks support in the record. See Reply at 11. Sousa, in support of this fact, cites to the Sousa Decl., which states that Chipotle Services Field Leaders oversee general mangers, do not work in the restaurants daily, and periodically visit their restaurants throughout the month.. See Sousa Decl. ¶ 4, at 2. The Sousa Decl. supports Sousa's assertion, and Chipotle Services does not cite to any record evidence to support its position. Accordingly, the Court deems this fact undisputed.
    Sousa also asserts that Sousa never received a "single write-up" during his time with Chipotle Services. See Response at 3. Chipotle Services disputes this fact, stating that Sousa does not cite to any record evidence. See Reply at 11. Sousa's assertion lacks a citation to the record. Accordingly, the Court does not include Sousa's assertion in the text as an undisputed fact. See D.N.M.LR-Civ. 56.1 ("Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.").

Mr. Hannan is approximately five (5) years younger than Mr. Sousa); Hannan Decl. ¶ 1, at 1.[19]

"During the time period that Plaintiff worked for TD Hannan, TD Hannan managed seven Field

Leaders, at least four of whom were over the age of 40 [sic] years old": Sousa, age fifty-four,

Mladen Grgic, age forty-six, Jay Mueller, age forty-four, and Elsa Armendariez, age forty-one.

Motion at 4 (asserting this fact)(citing Hannan Decl. ¶ 10, at 3; and Deposition of Patrick Hannan

at 38:8-40:22 (taken February 1, 2024), filed June 17, 2024 (Doc. 64-5)("Hannan Depo."));

Hannan Decl. ¶ 10, at 3; Hannan Depo. at 38:8-40:22.[20]   In the past seven years, Hannan has

managed thirteen Field Leaders who are over forty years old.  See Motion at 4 (asserting this

fact)(citing Hannan Decl. ¶ 9, at 3); Hannan Decl. ¶ 9, at 3.[21]

---

[19]Sousa "disputes Defendant's characterization of Mr. Hannan being 'slightly' younger than Mr. Sousa."  Response at 8 (no citation for quoted material).  Sousa, however, "does not dispute that Mr. Hannan is approximately five (5) years younger than Mr. Sousa."  Response at 8.  Sousa does not offer any competent evidence in support of his contention that Hannan was not slightly younger than Sousa.  Accordingly, the Court deems this fact undisputed.

[20]Sousa contends that this fact is immaterial.  See Response at 8.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").  Accordingly, the Court deems this fact undisputed.

[21] Sousa contends that this fact is immaterial.  See Response at 8-9.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as

**4.    Chipotle Services Fires Tiffany Rodriguez, a Field Leader Over Forty, After a Cockroach Infestation Occurs In One of Her Stores.**

        **a.    Rodriguez' Employment History and Improvement Plan.**

Chipotle Services employed fifty-five-year-old Tiffany Rodriguez as a Field Leader in Arizona. See Response at 3 (asserting this fact)(citing Declaration of Tiffany Rodriguez ¶¶1-4, at 1, dated July 21, 2024, filed July 24, 2024 (Doc. 73-6)("Rodriguez Decl."); Rodriguez. Decl. ¶¶ 1-6, at 1.[22] Rodriguez worked at Chipotle Services for over seventeen years before she was fired. See Response at 3 (asserting this fact)(citing Rodriguez. Dec. ¶¶ 1-4, at 1); Rodriguez Decl. ¶ 1, at 1.[23] Before Hannan became her director, Chipotle Services never took any disciplinary action

_____

immaterial in response to an asserted fact effectively deems the fact undisputed."). Accordingly, the Court deems this fact undisputed.

[22]Chipotle Services' Reply does not mention, contradict, address, or otherwise respond to this fact; accordingly, the Court deems this fact undisputed. See D.N.M.L.R.-Civ. 56.1 ("All material facts set forth in the response will be deemed undisputed unless specifically controverted.")

[23]Chipotle Services objects to Sousa's assertion that "Ms. Rodriguez had worked for Chipotle for 17-years [sic] before her termination." Reply at 12. Chipotle Services argues that Sousa "fails to provide a citation to the record supporting his contention." Reply at 12. At the end of the paragraph in which this contention appears in the Response, Sousa cites to paragraphs one through four of the Rodriguez Decl.; in paragraph one, Rodriguez declares that she worked for Chipotle Services for over seventeen years. See Rodriguez Decl. ¶ 1, at 1. Because Sousa cites to the Rodriguez Decl. at the end of the paragraph in which he discusses her employment history, the Court concludes that Sousa supports his contention with record evidence, and because Chipotle Services does not cite to any record evidence that contradicts the Rodriguez Decl., the Court deems this fact undisputed.

        Sousa asserts that "Mr. Hannan advised Mr. [sic] Rodriguez that she was being fired due to cockroach problem at a restaurant in her patch, store number 861 in Phoenix," Response at 4, and Chipotle Services disputes this assertion, see Reply at 12. In support of his contention, Sousa cites to the Rodriguez Decl., which states: "On January 3, 2022, three (3) days before my termination, I was notified for the first time that there were cockroach sightings at Store 861." Rodriguez Decl. ¶ 7, at 1. In support of its position, Chipotle Services cites to the Rodriguez Depo., in which Rodriguez testifies:

against Rodriguez. See Response at 3 (asserting this fact)(citing Rodriguez Dec. ¶¶ 1-4. at 2);
Rodriguez Decl. ¶¶ 1-4, at 2.[24]  Rodriguez "received a 'Needs Improvement' rating on her 2020
annual performance review and was then placed on a performance improvement plan in July

---

> Q:   So the -- well, when it says here, without any warnings, you were just
>      talking about the fact you weren't even told the reason that you were fired?
>
> A:   Correct.
>
> Q:   You had been warned about your performance, you just had no idea why
>      you were fire[sic]; is that right?
>
> A:   Correct.

Rodriguez Depo. at 73:21-74:4. The Rodriguez Decl.'s seventh paragraph does not support Sousa's assertion that Hannan told Rodriguez that she was being fired because of cockroach problems, because it does not purport to recount Hannan's statements.  The Court, therefore, does not adopt Sousa's assertion, because it lacks support in his cited record evidence.

[24]Chipotle Services successfully disputes this fact.  See Reply at 12 (citing the Deposition of Tiffany Rodriguez at 72:1-7, (taken September 6, 2024), filed September 27, 2024 (Doc. 80-3)("Rodriguez Depo.")).  Sousa, in support of his assertion, cites to the Rodriguez Decl., which states: "During my entire time at Chipotle, I never had a write-up or disciplinary action taken against me." Rodriguez Decl. ¶ 4, at 1.  Chipotle Services, in support of its position, cites to the Rodriguez Depo., which agrees that the Rodriguez Decl.'s fourth paragraph is not accurate.  See Rodriguez Depo. at 72:1-12.  Sousa's assertion regarding Rodriguez' disciplinary history conflicts with her deposition testimony, in which she agrees that the Rodriguez Decl. mistakenly recounts her disciplinary history.  The Court notes that this situation, in which a witness submits a declaration and subsequently gives conflicting testimony at her deposition, does not fall within the sham affidavit doctrine's purview.  The sham affidavit doctrine allows a district court, under certain circumstances, to disregard a witness's affidavit that contradicts that witness's prior sworn testimony.  See Law Co., Inc. v. Mohawk Const. & Supply Co., Inc., 577 F.3d 1164, 1169 (10th Cir. 2009)(describing the sham affidavit doctrine as applicable when the affidavit conflicts with an affiant's prior sworn statements).  Here, the Rodriguez Depo. -- taken on July 21, 2024 -- predates the Rodriguez Depo. -- taken on September 6, 2024.  The sham affidavit doctrine, therefore, is inapplicable here, and the Court analyzes Rodriguez' conflicting testimony in accordance with its obligation to view the evidence in the light most favorable to the nonmoving party at the summary judgment stage.  See Hunt v. Cromartie, 526 U.S. 541, 551 (1999).

2021." Reply at 15 (asserting this fact)(citing Deposition of Tiffany Rodriguez at 23:15-23; id. at 36:16-20 (taken September 6, 2024), filed September 27, 2024 (Doc. 80-3)("Rodriguez Depo")). See Rodriguez Depo. at 23:15-23; id. at 36:16-20.[25] "After being placed on the performance improvement plan, Rodriguez understood that she needed to improve her performance and knew what she needed to do in order to improve." Reply at 15 (asserting this fact)(citing Rodriguez Depo. at 40:17-22). See Rodriguez Depo at 40:17-22.[26]

### b.   Chipotle Services Transfers Store 861 to Rodriguez, and The Store Develops a Pest Problem.

In mid-September or October of 2021, Chipotle Services transferred Store 861 to Rodriguez' patch; before the transfer, Store 861 belonged to Edwin Sanchez, who is another Field Leader in Arizona. See Response at 4 ("Store 861 had just been transferred to Ms. Rodriguez from the patch of another Field Leader, Edwin Sanchez, who was 30-years-old."); Reply at 12 (not disputing this assertion, but disputing Sousa's characterization of the transfer's timing); Rodriguez Decl. ¶ 8, at 1.[27] On December 31, 2021, an employee submitted a service request through

---

[25]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[26]Chipotle Services sets forth this additional fact in its Reply, and Sousa did not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[27]Sousa asserts: "Store 861 had just been transferred to Ms. Rodriguez from the patch of another Field Leader, Edwin Sanchez, who was 30-years-old," Response at 4, but Chipotle Services disputes this contention "on the grounds that Store 861 had not 'just been transferred to Rodriguez,'" Reply at 12 (quoting Response at 4). In support of Sousa's contention, Sousa cites to the Rodriguez Decl., which states that "Mr. Hannan had advised me in the fall of 2021 that Chipotle would be transferring Store 861 to my patch. It had previously been in the patch of Edwin

Chipotle Services' internal reporting system regarding a pest issue at Store 861; Rodriguez did not

immediately receive any notification about the service request, however, because the system had

not yet processed Store 861's transfer from Sanchez to Rodriguez.  See Response at 4 (asserting

this fact)(citing New Service Request at 2-4 (dated December 31, 2021), filed July 24, 2024 (Doc.

73-7)); New Service Request at 2-4.[28]  On January 3, 2021, Rodriguez received a notification about

_____

Sanchez, another Field Leader in Arizona."  Rodriguez Decl. ¶ 8, at 1.  Sousa also cites to "Ex. 5 at 30:8-13," but this exhibit, the Hannan Depo., does not contain the cited page.  On the other hand, Chipotle Services, in support of its position, cites to the Rodriguez Depo., which states that Chipotle Services transferred Store 861 to Rodriguez in either mid-September or early October of 2021.  See Reply at 12 (citing Rodriguez Depo. at 74:5-19).  Sousa's record evidence does not support his assertion, because the Rodriguez Decl. discusses when Hannan informed her as to the transfer's timing, and does not discuss when the transfer actually occurs.  Chipotle Services' record evidence, on the other hand, does discuss the transfer's timing.  Accordingly, the Court declines to adopt Sousa's assertion in the text as an undisputed fact, but, to be fair to Sousa, the Court modifies slightly his assertion so as to better reflect what the record evidence supports.

[28]Chipotle Services purports to dispute this fact, stating in its Reply: "Chipotle objects to the last sentence in ¶ 1 as Rodriguez does not recall whether the General Manager of the restaurant notified her of the pest issues before her termination."  Reply at 12 (citing Rodriguez. Depo. at 75:18-76:3).  In support of its assertion, Chipotle Services cites to the Rodriguez Depo., in which Rodriguez testifies as follows:

> Q:    Do you deny that Ericka Cabrera told you about cockroach sightings at
>        any time in 2021?
>
> A:    The only time that I know about is once I got to the -- well, once I received
>        that e-mail and then I went there.  But I don't recall her saying that.
>
> Q:    Is it possible she did tell you about it and you just don't recall?
>
> A:    It could be.

Rodriguez Depo. at 75:18-76:3.  Sousa, on the other hand, cites to an internal Chipotle Services document, titled "New Service Request," which describes the cockroach issue at Store 861, and, under the section entitled "Location Notes," lists Edwin Sanchez as the Team Leader.  New Service Request at 2-4.  The Court concludes that Chipotle Services' citation to the Rodriguez Depo. does not contradict Sousa's assertion, because Sousa's assertion pertains to the service request, specifically, and does not purport to assert that anyone else did or did not notify Rodriguez about

Store 861's pest issue.  See Response at 4 (asserting this fact)(citing Rodriguez Decl.); Rodriguez

Decl. ¶ 12, at 2.[29]  After Rodriguez received the notification, she "immediately began doing

everything that she could to resolve the issue."  Response at 4 (asserting this fact)(citing Rodriguez

Decl.; and "e-mails in Ex. 7").  See Rodriguez Decl. ¶ 12, at 2; Email from Tiffany Rodriguez to

Kody Ball (Jan. 4, 2022, 12:35 a.m.) at 13, filed July 24, 2024 (Doc. 73-7)("Rodriguez-to-Ball

Email").[30]  Joshua Amy, a facilities manager at Chipotle Services, "had never seen a pest

---

the infestation.  Accordingly, the Court deems this fact undisputed.

    [29]Chipotle Services purports to dispute this fact.  See Reply at 12 (citing Rodriguez Depo.
at 75:18-76:3).   Sousa, in support of his assertion, cites to the Rodriguez Decl., but does not
provide a pin cite.  See Response at 4.  The Rodriguez Decl. states: "On January 3, 2022, three (3)
days before my termination, I was notified for the first time that there were cockroach sightings at
Store 861."  Rodriguez Decl. ¶ 7, at 1.  Chipotle Services, in support of its position, cites to the
Rodriguez Depo., in which Rodriguez testifies:

> Q:    Do you deny that Ericka Cabrera told you about cockroach sightings at
>       any time in 2021?
>
> A:    The only time that I know about is once I got to the -- well, once I received
>       that e-mail and then I went there.  But I don't recall her saying that.
>
> Q:    Is it possible she did tell you about it and you just don't recall?
>
> A:    It could be.

Reply at 12 (citing Rodriguez Depo. at 75:18-76:3).  Rodriguez' testimony in the Rodriguez Depo.
is consistent with her statement in the Rodriguez Decl.  Rodriguez' concession at the Rodriguez
Depo. that it is possible someone told her earlier about the cockroaches, but she does not recall, is
insufficient to create a disputed fact.  Accordingly, the Court deems this fact undisputed.

    [30]Chipotle Services purports to dispute this fact, stating in its Reply: "Chipotle disputes the
second sentence in ¶ 2 on the grounds that Rodriguez did not 'immediately beg[i]n doing
everything she could to resolve the issue.'"  Reply at 12 (quoting Response at 4)(alteration in the
Reply, but not in the Response).  In support of its position, Chipotle Services cites to the Hannan
Depo. at 113:6-16, see Reply at 12, in which Hannan testifies that the store's manager told him
that "she had been trying to get help from her field leader to take care of this issue, wasn't getting
support."  Hannan Depo. at 113:6-16.  In support of Sousa's assertion that Rodriguez immediately

infestation to the magnitude of the one at Store 861." Reply at 16 (asserting this fact)(citing Deposition of Joshua Amy at 131:8-10 (taken September 4, 2024), filed September 27, 2024 (Doc. 80-4)("Amy Depo."). See Amy Depo. at 131:8-10.[31] "According to Amy, there were thousands of baby cockroaches throughout the store." Reply at 16 (asserting this fact)(citing Amy Depo. at 131:8-10). See Amy Depo. at 131:8-10.[32] "This infestation was so extraordinary, unusual, and severe, that Chipotle had to throw out and replace several pieces of equipment from the restaurant that were infested with cockroaches." Reply at 16 (asserting this fact)(citing Amy Depo. at 125:14-16; 114:6-9). See Amy Depo. at 125:14-16; 114:6-9.[33]

---

began doing everything she could to resolve the pest issue once she received the notification, Sousa cites to the Rodriguez Decl., which states: "When I received notice of the issue on January 3, 2022, I immediately went to Store 861 and contacted Orkin to assist in resolving the issue. I contacted Pat Hannan to discuss my efforts in resolving the issue." Rodriguez Decl. ¶ 12, at 2. Additionally, Sousa cites to "e-mails in Ex. 7," in which Rodriguez communicates with Kody Ball about Rodriguez' efforts to resolve the cockroach issue. Response at 7 (citing "e-mails in Ex. 7"). See Rodriguez-to-Ball Email at 13. "Taking the evidence in the light most favorable to the nonmoving party, as it must, the Court concludes that, for the purpose of this motion," Sousa has established that Rodriguez immediately begins doing everything she could to resolve the pest issue at Store 861. DeSantis v. Napolitano, No. CIV 08-1205 JB/KBM, 2010 WL 2292592, at *5 n. 8 (D.N.M. May 26, 2010)(Browning, J.).

[31]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[32]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[33]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

c.    **Hannan Fires Rodriguez.**

On January 6, Hannan fires Rodriguez.  See Response at 4 (asserting this fact)(citing Rodriguez. Decl.); Rodriguez. Decl. ¶ 5, at 1.[34]  "Rodriguez claims Hannan did not provide a reason for her termination, which led her to believe that she was terminated because of the infestation at [Store] 861."  Reply at 16 (asserting this fact)(citing Rodriguez Depo. at 53:10-19).  See Rodriguez Depo. at 53:10-19.[35]  "Rodriguez was thirty [] days away from her Chipotle stock vesting at the time of her termination, causing her to lose $235,000.00.  Her position was filled by Fabiola Cruz, 28-years-old, who had already been training for the field leader position."  Response at 4 (asserting this fact)(citing Rodriguez Decl.); Rodriguez Decl. ¶¶ 23, 24, at 3.[36]  "To this day, the thought of Hannan makes Rodriguez angry."  Reply at 16 (asserting this fact)(citing Rodriguez Depo. at 51:13-25).  See Rodriguez Depo. at 51:13-25.[37]  "It is standard practice at Chipotle for a

---

[34]Chipotle Services' Reply does not mention, contradict, address, or otherwise respond to this fact; accordingly, the Court deems this fact undisputed.  See D.N.M.L.R.-Civ. 56.1 ("All material facts set forth in the response will be deemed undisputed unless specifically controverted.").

[35]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[36]Chipotle Services' Reply does not mention, contradict, address, or otherwise respond to this fact; accordingly, the Court deems this fact undisputed.  See D.N.M.L.R.-Civ. 56.1 ("All material facts set forth in the response will be deemed undisputed unless specifically controverted.").

[37]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

General Manager to start training for a Field Leader position prior to a position becoming available." Reply at 15 (asserting this fact)( citing Rodriguez Depo. at 93:4-22; and Hannan Depo. at 123:1-13). See Rodriguez Depo. at 93:4-22; Hannan Depo. at 123:1-13.[38] "Chipotle has a Field Leader in Training Program for this purpose to ensure that its open Field Leader positions can be filled as needed." Reply at 15 (asserting this fact)(citing Hannan Depo. at 123:1-13). See Hannan Depo. at 123:1-13.[39] "Fabiola Cruz was in the Field Leader in Training Program for this purpose; there is no evidence she had been selected to replace Rodriguez before Rodriguez's position became available." Reply at 15 (asserting this fact)(citing Rodriguez Depo. at 93:4-23; 97:14-98:10; and Hannan Depo. at 122:23-123:14. See Rodriguez Depo. at 93:4-23; 97:14-98:10; Hannan Depo. at 122:23-123:14.[40]

d.      **Rodriguez' and Amy's Knowledge About Sousa's Termination.**

"Prior to Rodriguez's termination, she did not interact with [Sousa] often." Reply at 16 (asserting this fact)(citing Rodriguez Depo. at 62:19-21). See Rodriguez Depo. at 62:19-21.[41]

---

[38]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[39]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[40]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[41]Chipotle Services sets forth this additional fact in its Reply, and Sousa did not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the

"Indeed, she did not interact with him enough to form an opinion on his work performance, as she was never at any of his restaurants." Reply at 16 (asserting this fact)(citing Rodriguez Depo. at 62:25-63:8). See Rodriguez Depo. at 62:25-63:8.[42] "Similarly, Amy also did not know anything about any of Plaintiff's performance indicators or performance feedback, as he only met him once while employed with Chipotle." Reply at 16 (asserting this fact)(citing Amy Depo. at 112:4-7; 67:12-14). See Amy Depo. at 112:4-7, 67:12-14.[43] "Prior to speaking with Plaintiff after his termination, Amy and Rodriguez had no knowledge of why Plaintiff was terminated or the circumstances surrounding his termination." Reply at 16 (asserting this fact)(citing Amy Depo. at 68:20-24; and Rodriguez Depo. at 52:22-25). See Amy Depo. at 68:20-24; Rodriguez Depo. at 52:22-25.[44] "Although they both testified in their declarations that they believed Plaintiff's termination was wrongful, they confirmed that they based their opinions only on what Plaintiff told them." Reply at 16 (asserting this fact)(citing Amy Depo. at 67:22-25; 109:19-22; and

---

Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[42]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[43]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[44]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact. Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed. See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

Rodriguez Depo. at 53:1-19).  See Amy Depo. at 67:22-25; 109:19-22; Rodriguez Depo. at 53:1-19).[45]  "Similarly, Amy also testified that, although he did not have any personal knowledge of Rodriguez's disciplinary history, performance improvement plan, or termination, he based his opinion on Rodriguez's termination on what she had told him."  Reply at 17 (asserting this fact)(citing Amy Depo. at 109:4-110:9).  See Amy Depo. at 109:4-110:9.[46]

**5.      Chipotle Services Fires Sousa After One of Sousa's Restaurants, the UNM Location, Develops a Cockroach Issue.**

**a.      Chipotle Services Recognizes Sousa's High Performance, and Sousa Is Alerted to the First Service Request Regarding a Cockroach Issue at the UNM Location.**

In February of 2022, Chipotle Services recognized Sousa as one of the company's top performing Field Leaders; this recognition involved various metrics, including Sousa's restaurants' overall cleanliness.  See Response at 3 (asserting this fact)(citing Sousa Depo. at 58:4-60:25; Sousa Depo. at 58:4-60:25; id. at 61:6-23.[47]  In that same month, Chipotle Services recognized Sousa for his high performance "through an annual review and salary increase."

---

[45]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[46]Chipotle Services sets forth this additional fact in its Reply, and Sousa does not respond, either in writing or at the hearing, to dispute this fact.  Because there is no evidence to dispute the Reply's additional fact, the Court deems this additional fact undisputed.  See Estate of Anderson v. Denny's Inc., 987 F.Supp. 2d 1113, 1120 n.8 (D.N.M. 2013)(Browning, J.).

[47]Chipotle Services' Reply does not mention, contradict, address, or otherwise respond to this fact; accordingly, the Court deems this fact undisputed.  See D.N.M.L.R.-Civ. 56.1 ("All material facts set forth in the response will be deemed undisputed unless specifically controverted.").

Response at 3 (asserting this fact)(citing Sousa Depo. at 53:2-25).  See Sousa Depo. 53:6-25.[48]  On February 7, 2022, an employee at Chipotle Services' University of New Mexico ("UNM") location, which is a restaurant located in Sousa's patch, "submitted a service channel request to seek assistance with 'a bad roach infestation throughout the restaurant.'"  Motion at 5 (asserting this fact)(citing Email from Echo Alford to Donald Sousa (Feb. 9, 2022 9:54 a.m.) at 5-6, filed June 17, 2024 (Doc. 64-7)("Feb. 9 Alford Email Chain"); and Sousa Depo. at 72:21-73:21).  See Response at 9 (stating that Sousa does not dispute this fact); Feb. 9 Alford Email Chain at 5-6; Sousa Depo. at 72:21-73:21.  The following day, February 8, 2022, Echo Alford, a food-safety specialist at Chipotle Services, emailed Sousa -- cc'ing Hannan and Amanda Connell, Chipotle Services' Regional Food Safety Manager, "for additional visibility" -- and instructs him to follow up with the UNM location; she recommends that he identify and resolve "any structural or sanitation opportunities that may be contributing to the activity."  Motion at 5 (asserting this fact)(citing Feb. 9 Alford Email Chain at 4).  See Response at 9 (stating that Sousa does not dispute this fact).  Feb. 9 Alford Email Chain at 4.[49]

Hannan responds to Alford's email, indicates that he did not know about the infestation,

---

[48]Chipotle Services purports to dispute this fact "on the grounds that the citation provided does not support [Sousa's] contention."  Reply at 11.  Chipotle Services, in support of its position, points to the Hannan Depo., which states that Hannan gave a merit-based pay increase to Sousa after an annual increase.  See Hannan Depo. at 53:10-23; id. at 57:7-58:1.  Chipotle Services' record evidence does not contradict Sousa's assertion, and, in fact, supports it.  Accordingly, the Court deems this fact undisputed.

[49]Chipotle Services asserts that Alford copied Hannan and Amanda Connell, Chipotle Services' Regional Food Safety Manager, on the February 9, 2022, email.  See Motion at 5 (citing Feb. 9 Alford Email Chain at 4).  The record evidence, however, shows only that Alford copied Hannan and not Connell.  Feb. 9 Alford Email Chain at 4.  Because the parties do not dispute, however, that Alford also copied Connell, the Court deems this fact undisputed.

and confirms that he plans to visit the restaurant the following day.  See Motion at 5 (asserting this fact)(citing Feb. 9 Alford Email Chain at 4.);  Response at 9 (stating that Sousa does not dispute this fact); Feb. 9 Alford Email Chain at 4.  Like Hannan, Sousa also did not know about the infestation before February 8, 2022.  See Response at 9 (asserting this fact)(citing Sousa Depo. at 75:1-21; and Deposition of Xavier Bonilla at 32:23-33:24 (taken April 25, 2024), filed July 24, 2024 (Doc. 73-8)("Bonilla Depo.")); Sousa Depo. at 75:1-21; Bonilla Depo. at 32:23-33:24.[50] Sousa acknowledges that one of his responsibilities as a Field Leader "was to keep his Team Director appraised of all serious issues in the restaurant," but Sousa did not advise Hannan of the infestation before Hannan received the February 8, 2022, email.  Motion at 5 (asserting this fact)(citing Hannan Depo. at 61:18-25); Hannan Depo. at 61:18-25.[51]  Sousa agrees that the infestation is a serious issue that should be communicated promptly.  See Motion at 5 (asserting this fact)(citing Sousa Depo. at 80:4-7); Response at 9 (stating that Sousa does not dispute this fact); Sousa Depo. at 80:4-7.  The "employees at the UNM store would mask the pest and

---

[50]Chipotle Services purports to dispute this fact in its Reply, stating: "Objection; not a genuine dispute; unsupported by contrary record evidence.  Plaintiff's response does not dispute the actual facts set forth by Chipotle but rather attempts to argue the merits of his case."  Reply at 6 (not citing to the record).  Chipotle Services does not offer any evidentiary support for its contention.  Moreover, elsewhere in its Reply, Chipotle Services states: "Chipotle does not dispute that Plaintiff testified that he was not aware of the cockroach infestation prior to the February 9 email."  Reply at 12 (not citing to the record).  Accordingly, the Court deems this fact undisputed.

[51]Sousa purports to dispute this fact, stating that he "disputes UMF No. 19, in so far [sic] as it implies that Plaintiff knew about the roach issue before February 8, 2022."  Response at 9 (not citing to the record).  This is not a genuine factual dispute, because disputing a fact's implication does not dispute the fact.  See Harjo v. City of Albuquerque, 326 F.Supp. 3d 1145, 1163 n.25 (D.N.M. 2018)(Browning, J.)("There is no factual dispute, because disputing an implication from a fact does not dispute the fact.").   The purported implication to which Sousa objects bears on the fact's materiality, which the Court will consider in the Analysis Section.

cleanliness issues with deep cleaning prior to Mr. Sousa's scheduled visits at the store, causing it

to appear to Mr. Sousa that the restaurant was clean." Response at 4 (asserting this fact)(citing

Bonilla Depo. at 33). See Bonilla Depo. at 33:12-24.[52]

---

[52]Chipotle Services disputes this fact, stating "Chipotle further objects to the fourth sentence in ¶ 4 on the grounds that it is immaterial and not supported by the record evidence. Bonilla did not have personal knowledge of whether the crew was cleaning before visits." Reply at 12 (citing Bonilla Depo. at 34:1-6). Sousa, in support of his assertion, cites to the Bonilla Depo., in which Xavier Bonilla, the UNM location's general manager, testifies:

> Q:   What makes you say that you don't think he knew?
>
> A:   So, seemed to me, that when meetings or walk-throughs were expected, the restaurant would be cleaned beforehand.
>
> Q:   Okay.  What's that based on? Did Diego tell you that or did -- how else did you know that?
>
> A:   I just -- crew members and everything like that, it's almost like you clean before a walk-through.  So they were accustomed to that.
>
> Q:   Okay.  But I'm just trying to understand.  Did you see that happen?  Did someone tell you?
>
> A:   I did see that happen.

Bonilla Depo. at 33:12-24. Chipotle Services, in support of its position, also cites to the Bonilla Depo., in which Bonilla testifies: "Q: Did someone tell you that that's what was happening?  A: Yes.  Crew members said they were cleaning before visits.  But, again, that's all hearsay.  I didn't see anything, though.  Q:  Do you know which crew members told you that?  A:  Off the top of my head, no."  Bonilla Depo. at 34:1-6.  Bonilla's testimony is self-contradictory: he first testifies that he has seen crew members clean before a walkthrough, but seconds later, he testifies that crew members told him they clean before visits, and states, "that's all hearsay.  I didn't see anything, though."  Bonilla Depo. at 33:12-24; 34:1-6.  "Taking the evidence in the light most favorable to the nonmoving party, as it must, the Court concludes that, for the purpose of this motion," Sousa has established that the UNM store employees would mask the pest and cleanliness issues with deep cleanings before Sousa's scheduled visits, causing it to appear to Sousa that the restaurant was clean, and the Court includes this assertion in the text as an undisputed fact for this opinion's purposes.  DeSantis v. Napolitano, No. CIV 08-1205 JB/KBM, 2010 WL 2292592, at *5 n. 8 (D.N.M. May 26, 2010)(Browning, J.).

Additionally, the Court overrules Chipotle Services' personal-knowledge objection.

b.     **Hannan Visits the UNM Location on February 9, 2022.**

When Hannan visited the UNM location "on or about February 9, 2022," its condition shocked him, because "the restaurant was significantly below Chipotle's cleanliness standards. There were also dozens of cockroaches all throughout the restaurant."  Motion at 5 (asserting this fact)(citing Hannan Depo. at 70:2-9; id. at 19-24).  See Response at 9 (stating that Sousa does not dispute this fact); Hannan Depo. at 70:2-9; id. at 19-24.  After Hannan completed his walkthrough of the restaurant, Sousa and Hannan discuss the lack of action that has been taken since the service request's initial submission, the infestation's seriousness, and risk it poses to food safety.  See Motion at 5 (asserting this fact)( citing Hannan Depo. at 70:19-24; Sousa Depo. at 81:12-15; and id. at 82:21-23); Response at 9 (stating that Sousa does not dispute this fact); Hannan Depo. at 70:19-24; Sousa Depo. at 81:12-15; id. at 82:21-23.  Between February 9, 2022, and March 16, 2022, Sousa and Hannan spoke several times about the infestation's status, and Hannan advises Sousa that the issue requires immediate correction.  See Motion at 6 (asserting this fact)(citing Employee Corrective Action Form at 1 (dated March 24, 2022), filed June 17, 2024 (Doc. 64-9)); Response at 10 (stating that Plaintiff does not dispute that he was in constant contact with Hannan about the infestation); Employee Corrective Action Form at 1.   "Between February 9, 2022, and March 16, 2022, the infestation persisted."  Motion at 6 (asserting this fact)(citing Sousa Depo. at

---

Bonilla first testifies that he saw the cleaning occur, see Bonilla Depo. at 33:19-24, and he subsequently testifies that crew members told him they were cleaning before visits, see Bonilla Depo. at 34:1-6.  Bonilla has personal knowledge of an event he personally witnesses, and he also has personal knowledge of statements crew members told to him.  Therefore, the Court finds, by a preponderance of the evidence, that Bonilla has personal knowledge about the cleaning, regardless of whether he witnesses it or whether other employees tell him about it.  See Fed. R. Evid. 104(a).

88:20-24).   <u>See</u> Sousa Depo. at 88:20-24.[53]   "Sousa personally contacted Orkin[, Chipotle

---

[53]Sousa purports to disputes this fact, stating: "This assertion is entirely controverted by the record.  Both the General Manager and Orkin agreed that the 'infestation' did not persist, but was improving.  The General Manager, who was in the store on a daily basis, testified that the issue had resolved before Mr. Sousa was fired."  Response at 10 (no citation for quoted material).  Chipotle's Reply states, in response: "Objection; not a genuine dispute; unsupported by contrary record evidence.  Plaintiff himself confirmed under oath the pest infestation persisted.  Plaintiff cannot now contradict his sworn testimony."  Reply at 7.  Chipotle Services, in support of its assertion, cites to the Sousa Depo., which states: "Q: Given that you'd been visiting the restaurant two times per week in this period between February 9th and March 17th, you were aware that the cockroach issue was persisting, weren't you?  A: Yes."  Sousa Depo. at 88:20-24.  Sousa, in support of his position, cites to Orkin's Pest Control Supplemental Inspection Report, which states:

> Spoke with manager on duty.[sic] Alexis as well as GM Don last week.  Alexis stated they are just seeing 1 or 2 roaches randomly and mainly in dry storage areas and by the front line.  I inspected all areas and didn't see any current activity.   In speaking with Don last week he just requested a couple additional services to which I assured him we would provide, since the conversation we have already provided 2 additional services.  Both Don and Alexis have said that the issue has been drastically reduced and again still just seeing the 1 or 2 randomly.  They are doing a good job of keeping drains clean and evidently did an additional deep dive clean last Friday 3/18.

Orkin Pest Control Supplemental Inspection Report at 2, (dated March 21, 2022), filed June 17, 2024 (Doc. 64-8)("March 21 Orkin Report").  Sousa, moreover, also cites to the Bonilla Depo. in support of his position, in which Bonilla, the UNM location's general manager, states: "Q: Was it before or after Mr. Sousa left that the problem went away?  A: Before.   Q: So the cockroach infestation was cleared up before Mr. Sousa was terminated?  A: Yes."  Bonilla Depo. at 18:3-13.
     Regarding Sousa's record evidence: first, the Orkin report's statement that the Orkin employee did not observe any cockroaches on March 21, 2022, does not address the Sousa Depo.'s statement regarding the presence of cockroaches between February 9, 2022, and March 17, 2022.  If Sousa wished to successfully dispute his own deposition testimony, he would need to point to record evidence that also addresses the presence of cockroaches in the asserted time period, not just on a single day.  Second, the Bonilla Depo.'s statement only supports Sousa's position in isolation: it is undisputed that on March 17, 2022, Hannan enters the UNM store and sees six cockroaches.  Because Sousa does not dispute that Hannan sees six cockroaches at the UNM store on March 17, 2022, no reasonable jury could consider the Bonilla Depo.'s statement and conclude that the cockroach problem "cleared up" before March 17, 2022.  <u>See</u> <u>Matsushita Elec. Indus. Co.</u> <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(quoting <u>First Nat. Bank of Ariz. v. Cities Serv.</u> <u>Co.</u>, 391 U.S. 253, 289 (1968))("Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'").  Accordingly, the Court deems this fact undisputed.

Services' pest-control vendor,] to ensure they were coming as often as possible."  See Response

at 10 (citing Text Message from Don Sousa to Seth (dated March 16) at 2, filed July 24, 2024

(Doc. 73-9)); Text Message from Don Sousa to Seth at 2.[54]

---

[54]Chipotle Services asserts that: "Despite Plaintiff confirming that it was his responsibility to make sure Orkin was servicing the restaurant, he had failed to confirm Orkin was continuing to provide sufficient treatments at the restaurant."  Motion at 6 (citing Sousa Depo. at 83:25-84:4; id. at 84:14-21).  Sousa successfully disputes this assertion, stating: "Sousa personally contacted Orkin to ensure they were coming as often as possible."  Response at 10 (citing Text Message from Don Sousa to Seth, dated March 16, filed July 24, 2024 (Doc. 73-9)).  Chipotle Services, in support of its assertion, cites to the Sousa Depo., which states:

> Q:    Since you were the one working with Orkin to make sure they were scheduled, do you have any explanation why they would have just started coming less?
>
> A:    No.
>
> Q:    And then at some point, you found out, and you told them to start coming every other day again; is that accurate?
>
> A:     Yes.
>
> Q:    Okay.  When did you start telling them to come -- start coming again every other day?
>
> A:    I would say it was a few days, maybe a week before the 17th.

Sousa Depo. at 83:25-84:4; 84:14-21.  Sousa, in support of his position, cites to a text message, in which Sousa writes: "Hey Seth [t]he pest problem has decreased at UNM but not eliminated.  GM says no one has been out to service in 14 days minimum.  Can we keep the weekly routine until [sic] eliminate?  Don Sousa."  Text Message from Don Sousa to Seth at 2.  This text corroborates Sousa's statement at his deposition that he told Orkin to come more often after he realized they were coming less frequently.  See Sousa Depo. at 84:14-21.  In other words, the text suggests that Sousa "confirmed," Motion at 6, with Orkin that, in the future, they would come more frequently.  Accordingly, the Court deems this fact disputed, and includes Sousa's version of the fact in the text as an undisputed fact.  See Bell v. City of Tulsa, 2024 WL 1018528, *14 n.67 (D.N.M. Mar. 8, 2024)(Browning, J.)(citing Hunt v. Cromartie, 526 U.S. 541, 551 (1999))(accepting as true the plaintiff's version of the defendant's asserted fact).

### c.    Hannan Visits the UNM Location on March 17, 2022.

On March 17, 2022, Hannan visited the UNM location; during his first twenty minutes in the restaurant, he saw at least six cockroaches.  See Motion at 6 (asserting this fact)(citing Sousa Depo. at 93:11-24; and Hannan Depo. 87:20-25); Response at 10 (stating that Sousa does not dispute this fact); Sousa Depo. at 93:11-23; Hannan Depo. at 87:20-25.  "During this visit, [] Hannan was also made aware that the Orkin treatments had dropped off and had become less frequent despite the fact that the infestation had not yet been remediated."  Motion at 6 (asserting this fact)(citing Sousa Depo. at 88:13-19; and Employee Corrective Action Form at 2-3 (dated March 25, 2022), filed June 17, 2024 (Doc. 64-9)("Termination Form")).  See Response at 10 (stating that Sousa does not dispute this fact); Sousa Depo. at 88:13-19; Termination Form at 2-3.[55]  Elsa Armendariz, "a Field Leader in TD Hannan's patch who was 41 years old, was present

---

[55]Sousa asserts that: "Orkin was visiting the UNM store much more frequently than they did when Edwin Sanchez's store had a roach infestation, just months before the issue occurred at UNM."  Response at 10 (citing Orkin Service Ticket at 4 (dated October 12, 2021), filed July 24, 2024 (Doc. 73-13)("October 12, 2021, Orkin Service Ticket")).  See October 12, 2021, Orkin Service Ticket at 4.  Chipotle Services successfully disputes Sousa's assertion, stating:

The referenced Orkin record notes only ". . . there was still a little bit of roach activity at time of inspection which is expected when we do a roach cleanout it kills down the population it does not get rid of them one day [ . . .]."  [Orkin Service Ticket at 4.]  Nothing in Plaintiff's referenced citation indicates or confirms this pest issue was indeed a pest infestation or that it was due to any performance or nonperformance issues of Sanchez.

Reply at 7 (quoting Orkin Service Ticket at 4)(first brackets in original).  The Orkin record to which Sousa cites does not support his assertion that Sanchez' store had a roach infestation.  The October 12, 2021, Orkin Service Ticket discusses a "little bit of roach activity," not an infestation.  October 12, 2021, Orkin Service Ticket at 4.  The document's reference to a "population," moreover, appears in the context of an explanation about the effect of pest control measures, and does not describe the conditions at Sanchez' store.  October 12, 2021, Orkin Service Ticket at 4.  Accordingly, the Court does not adopt Sousa's assertion, because his cited record evidence does not support his assertion.

_____

Additionally, Chipotle Services asserts that Sousa "failed to tell TD Hannan that Orkin has started coming less frequently, despite learning about the charge in the treatment frequency one week prior." Motion at 6 (citing Sousa Depo. at 83:19-84:4; 84:10-21; and Hannan Depo. at 87:7-13). Sousa successfully disputes this assertion, stating: "Sousa learned about Orkin coming less immediately prior to advising Mr. Hannan of this issue. Mr. Sousa testified that the service decreased without his knowledge." Response at 11 (citing Sousa Depo. at 83:14-24; and Text Message from Don Sousa to Seth at 2). Chipotle Services, in support of its assertion, cites to the Sousa Depo., which states:

Q:    Who told you that the Orkin visits had decreased?

A:    Xavier.

Q:    Did Xavier -- Xavier explain why that happened?

A:    No. He just said they were coming less.

Q:    Since you were the one working with Orkin to make sure they were scheduled, do you have any explanation for why they would have just started coming less?

A:    No. . . .


Q:    So you had mentioned that they were coming every other day. At some point, they stopped doing that. You don't know why?

A:    Um-hmm.

Q:    And then at some point, you found out, and you told them to start coming every other day again; is that accurate?

A:     Yes.

Q:    Okay. When did you start telling them to come -- start coming again every other day?

A:    I would say it was a few days, maybe a week before the 17th . . .

Q:    And Pat writes, "I spoke to several crew and hourly managers; they quickly told me that the cockroach issue was ongoing and treatment" -- "treatments had dropped off without remedy." Was that accurate, to the best of your knowledge?

during the March 17th visit. [] Armendariz noticed sanitation issues and small cockroaches throughout the restaurant." Motion at 7 (asserting this fact)(citing Hannan Depo. at 39:18-19; and Deposition of Elsa Armendariz, taken April 23, 2024, filed June 17, 2024 (Doc. 64-10)("Armendariz Depo.")). See Hannan Depo. at 39:18-19; Armendariz Depo. at 17:2-10.[56] Additionally, a cockroach fell from the ceiling onto Armendariz' clipboard.[57] "At the end of this

_____

A:    Yes. That's why I -- I contacted Seth.

Sousa Depo. at 83:19-84:4; 84:10-21; 88:13-19. Chipotle Services also cites to the Hannan Depo., in which Hannan testifies: "Q: Okay. So the drains were clean? A: Yeah. I cleaned them. Q: On March 18th? A: Yes. Q: And on March 18th, you did the deep dive clean? A: Yes." Hannan Depo. at 87:7-13. Sousa, in support of his position, cites to portions of the Sousa Depo.; the only portion of the Sosua Depo. to which Sousa cites that Chipotle Services does not also cite is an answer in which Sousa states: "I think they were coming, if I remember correctly, every other day. And then it decreased without my approval, somewhere prior to the 3/17. And I reached out to the service manager to increase those visits again." Sousa Depo. at 83:14-18. Additionally, Sousa cites to a text message, which states: "Hey Seth [t]he pest problem has decreased at UNM but not eliminated. GM says no one has been out to service in 14 days minimum. Can we keep the weekly routine until [sic] eliminate? Don Sousa." Text Message from Don Sousa to Seth at 2. The Sousa Depo.'s excerpts to which Chipotle Services cites in support of its assertion do not recount Sousa's communications with Hannan, and, therefore, do not constitute competent evidence in support of Chipotle Services' assertion. Accordingly, the Court declines to include Chipotle Services' assertion in the text as a statement of undisputed fact. See SEC v. Goldstone, No. CIV 12-0257 JB/GBW, 2015 WL 5138242, *8 n.22 (D.N.M. Aug. 22, 2015)(Browning, J.)("Accordingly, the Defendants do not present evidence to support their asserted fact, and the Court will not consider it.").

[56]Sousa's Response does not mention, contradict, address, or otherwise respond to this fact; accordingly, the Court deems this fact undisputed. See D.N.M.L.R.-Civ. 56.1 ("All material facts set forth in the response will be deemed undisputed unless specifically controverted."); Response at 11 (stating that Sousa "disputes UMF No. 29. A cockroach never fell on Ms. Armendariz's head," but not stating a position as to UMF No. 29's other facts).

[57]Chipotle Services asserts that a cockroach fell from the ceiling onto Armendariz' hair, see Motion at 7 (citing Armendariz Depo. at 17:2-10), and Sousa successfully disputes this fact, see Response at 11 (citing Bonilla Depo. at 32:18-22). Chipotle Services, in support of its assertion, cites to the Armendariz Depo., in which Armendariz testifies that a cockroach fell on her hair. See Armendariz Depo. at 17:9-10. Sousa, in support of his position, cites to the Bonilla

visit, TD Hannan once again spoke with Plaintiff about the lack of progress in cleanliness and meeting food safety standards." Motion at 7 (asserting this fact)(citing Sousa Depo. at 86:16-19; id. at 86:24-87:4). See Sousa Depo. at 86:16-19; 86:24-87:4.[58] Hannan helped clean the restaurant himself. See Motion at 7 (asserting this fact)(citing Hannan Depo. at 87:16-23); Hannan Depo. at 87:16-23.[59] "A second service request was submitted, and TD Hannan escalated the issue to

---

Depo., in which Bonilla, the UNM Location's general manager, testifies that, while he does not remember a cockroach falling on Armendariz' head, he remembers it falling onto the clipboard Armendariz was holding. See Bonilla Depo. at 32:18-22. Chipotle Services and Sousa offer different accounts of where the cockroach fell. Accordingly, the Court deems this fact disputed, and includes Sousa's version of the fact in the text as an undisputed fact for this motion's purposes. See Hunt v. Cromartie, 526 U.S. 541, 551 (1999); Clayton v. Vanguard Car Rental U.S.A., Inc., 761 F. Supp. 2d 1210, 1234 n.35 (D.N.M. 2010)(Browning, J.)(accepting as true the plaintiff's version of the defendant's asserted fact, "[b]ecause the Court must construe the evidence in the light most favorable to the non-moving party.").

[58]Sousa purports to dispute "UMF No. 30 in its entirety." Response at 11. Sousa, however, does not directly respond to the above-the-line assertion. Instead, Sousa disputes and responds to other assertions Chipotle Services' proposed undisputed fact number thirty contains. Accordingly, the Court deems this fact undisputed. See D.N.M.L.R.-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[59]Sousa purports to dispute this fact, stating that it is "untrue, unsupported by any records," and noting, furthermore, that Armendariz "has no recollection of him ever cleaning the UNM store." Response at 11 (citing Armendariz Depo. at 18:22-19:7). Sousa, in support of his position, cites to the Armendariz Depo., in which she testifies: "Q: Did Pat clean the restaurant? A: I don't recall." See Armendariz Depo. at 18:25-19:1. Chipotle Services, in support of its assertion, cites to the Hannan Depo. at 87:16-23; this excerpt does not support the assertion, but testimony on the same page, which Chipotle Services has electronically highlighted, does support the assertion: Hannan testifies that he cleaned the drains on March 18th. Hannan Depo. at 87:7-13. Hannan's assertion that he cleaned the drains does not conflict with Armendariz' assertion that she does not recall Hannan cleaning the restaurant. No reasonable jury could infer from Armendariz' lack of memory of Hannan cleaning the drains that Hannan did not, in fact, clean the drains. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968))("Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'"). Accordingly, the Court deems this fact undisputed.

Amanda Connell, Regional Food Safety Manager, given the severity of the infestation." Motion at 7 (asserting this fact)(citing Email from Patrick Hannan to Amanda Connell at 2 (dated March 17, 2022 7:30 p.m.), filed June 17, 2024 (Doc. 64-11); and Sousa Depo. at 93:1-24). See Email from Patrick Hannan to Amanda Connell at 2; Sousa Depo. at 93:1-24.[60]

        **d.**      **Hannan, Sousa, and Armendariz Visit Sousa's ABQ Uptown Store.**

On March 18, 2022, Hannan, Sousa, and Armendariz "did a walkthrough of a different restaurant in Plaintiff's patch of stores, ABQ Uptown, and [] Armendariz was shocked and concerned about the conditions of the restaurant." Motion at 7 (asserting this fact)(citing Hannan Depo. at 83:21-84:2). See Hannan Depo. at 83:21-84:2.[61] After the walkthrough, Hannan, Sousa,

---

[60]Sousa purports to dispute this fact, stating:

> Plaintiff disputes UMF No. 30 in its entirety. The pest issue at UNM was improving as of March 2022. Any prior cleanliness issues had been resolved, which is why everyone (including Pat Hannan) was confused that there were still pest sightings. Mr. Hannan advised Amanda Connell that UNM was clean, yet the pest issue had not been resolved. See [Email from Patrick Hannan to Amanda Connell at 2, dated March 17, 2022 7:30 p.m., filed June 17, 2024 (Doc. 64-11)] (noting that the problem was ongoing but that "[t]he restaurant and drains are clean.").

Response at 11 (quoting Email from Patrick Hannan to Amanda Connell at 2)(brackets in the Response and not in the quoted material). Both Sousa and Chipotle Services cite to the same email in support of their position and assertion, respectively. See Motion at 7; Response at 11. The email unambiguously establishes that Hannan emailed Connell when he received another service request. See Email from Patrick Hannan to Amanda Connell at 2. Accordingly, the Court deems this fact undisputed.

[61]Sousa purports to dispute this fact, stating: "Plaintiff disputes UMF No. 31. The conditions at ABQ Uptown met Chipotle's standards." Response at 11 (citing Sousa Depo. at 91:4-16). Sousa, in support of his position, cites to the Sousa Depo., in which Sousa testifies:

> [Q:]  Do you agree that the team at ABQ Uptown had not maintained sanitary conditions in the back of the house?

and Armendariz discuss ABQ Uptown's dirty condition and the risk it posed to Chipotle Services.

See Motion at 7 (asserting this fact)(citing Sousa Depo. at 90:12-90:18; id. at 92:2-92:9); Sousa

Depo. at 90:12-90:18; id. at 92:2-92:9.[62]

---

Q:  No, I don't agree at all.

Q:  Why didn't you agree with that statement?

A:  Because I don't think we talked about it, so . . .

Q:  So it's not that you disagree that they were -- did not maintain sanitary
conditions.  You just disagree that you talked to Pat about it?

A:  No, I -- I -- actually, to correct that, I believe that the sanitary conditions
were fine in the back.

Sousa Depo. at 91:4-16.  Chipotle Services, in support of its assertion, cites to the Hannan Depo.,
in which Hannan testifies that Armendariz was "shocked by the cleanliness, lack of standards" at
the restaurant.  Hannan Depo. at 83:21-84:2.  Sousa's testimony does not address or respond to
Chipotle Services' assertion, which is that Armendariz was "shocked and concerned" about ABQ
Uptown's conditions.  Motion at 7 (citing Hannan Depo. at 83:21-84:2).  Sousa testifies that he
believes the restaurant was clean, but he does not testify as to Armendariz' reaction to or perception
of the restaurant's conditions.  Accordingly, the Court deems the fact in the text, that Armendariz
was shocked and concerned about the restaurant's condition, undisputed.  See D.N.M.L.R.-Civ.
56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless
specifically controverted.").

[62]Sousa purports to dispute this fact, stating "Plaintiff disputes UMF No. 32."  Response at
11 (citing Sousa Depo. at 91:4-16).  Chipotle Services, in support of its assertion, cites to the
Termination Form, which states: "Verbal 3/18/22 Don and I discussed the very dirty conditions at
#1714 ABQ Uptown."  Termination Form at 2.  Additionally, Chipotle Services cites to the Sousa
Depo., in which Sousa testifies that Hannan visited the ABQ Uptown store on March 18, 2022,
Sousa Depo. at 90:12-18, and also testifies:

Q:  Okay.  Do you agree with the statement that you, Pat, and Elsa discussed
the poor standards and risks that presented at ABQ Uptown at the
conclusion of that visit?

A:  I don't remember that.

Q:  Is it possible it happened?  You just don't remember one way or the other?

    e.  **Four of Sousa's Restaurants Fail Internal Audits' Cleanliness
Standards.**

  Between March 21, 2022, and March 24, 2022, four of Sousa's restaurants failed internal

site audits'[63] cleanliness standards.  <u>See</u> Motion at 8 (asserting this fact)(citing Termination Form

---

    A:  It's possible.

Sousa Depo. at 92:2-9.  Sousa, in support of his position, also cites to the Sousa Depo., in which
he testifies:

    Q:  Do you agree that the team at ABQ Uptown had not maintained sanitary
       conditions in the back of the house?

    A:  No, I don't agree at all.

    Q:  Why didn't you agree with that statement?

    A:  Because I don't think that we talked about it, so . . .

    Q:  So it's not that you disagree that they were -- did not maintain sanitary
       conditions.  You just disagree that you talked to Pat about it?

    A:  No, I -- I -- actually, to correct that, I believe the sanitary conditions were
       fine in the back.

Sousa Depo. at 91:4-16.  Sousa's testimony that "it's possible" he discussed the restaurant's
dirtiness with Hannan and Armendariz does not conflict with Termination Form's statement that
the conversation occurred.  Because a reasonable jury could not infer from Sousa's testimony that
"it's possible" he discussed the restaurant's dirtiness with Hannan and Armendariz that the
conversation did not occur, there is no genuine dispute.  <u>See Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.</u>, 475 U.S. 574, 587 (1986)(quoting <u>First Nat. Bank of Ariz. v. Cities Serv. Co.</u>, 391
U.S. 253, 289 (1968))("Where a rational trier of fact, considering the record as a whole, cannot
find for the nonmoving party, "there is no 'genuine issue for trial.'").  Accordingly, the Court
deems this fact undisputed.

  [63]While the parties' undisputed material facts do not describe an internal site audit entails,
the Court, for clarity's sake, describes them as follows, based on its review of the record: Chipotle
Services instructs its facilities managers to audit its restaurants each quarter.  <u>See</u> Tr. at 11:10-15
(Bulat).  The facilities managers inspect the restaurant, and provide the restaurants staff with an
email reporting the audit's result across several dimensions: a site audit score, a metric labeled

at 2-3; Email From Michael D. Angelo to nm.1919.Cottonwood (dated March 21, 2022 3:07 p.m.) at 2, filed June 17, 2024 (Doc. 64-12); Email From Michael D. Angelo to NM.1698.PaseodelNorte (dated March 22, 2022 2:14 p.m.) at 2, filed June 17, 2024 (Doc. 64-13); Email From Cruz Delgado to NM.3597.SanMateoMont (dated March 23, 2022 2:44 p.m.) at 2, filed June 17, 2024 (Doc. 64-14); Email From Cruz Delgado to nm.1714.abquptown (dated March 24, 2022 12:31 p.m.) at 2, filed June 17, 2024 (Doc. 64-15); Sousa Depo. at 94:23-95:7; id. at 95:12-21; id. at 96:21-25; id. at 97:4-9; id. at 98:3-17; and id. at 99:5-15).    See Email From Michael D. Angelo to nm.1919.Cottonwood at 2; Email From Michael D. Angelo to NM.1698.PaseodelNorte at 2; Email From Cruz Delgado to NM.3597.SanMateoMont at 2; Email From Cruz Delgado to nm.1714.abquptown at 2; Sousa Depo. at 94:23-95:7; id. at 95:12-21; id. at 96:21-25; id. at 97:4-9; id. at 98:3-17; and id. at 99:5-15).[64]    Sousa agrees that these four restaurants did not meet

---

"overall cleanliness at time of my visit," and "pest activity."  Email From Michael D. Angelo to nm.1919.Cottonwood(dated March 21, 2022 3:07 p.m.) at 2.

[64]Sousa purports to dispute this fact, stating:

> Plaintiff disputes UMF No. 34.  The assertions of UMF No. 34 fail to clarify which "cleanliness standards" are at issue.  As for Chipotle's cleanliness standards, all four stores received passing scores -- some of the scores even increased from the previous site audit.  See [Hannan Depo.] at 107:24-1[0]8:14.  The facilities managers were asked by Mr. Hannan (not by Chipotle) to give a store an arbitrary "yes" or "no" regarding cleanliness, even if the restaurant receiving passing scores from the site audit.  See [Amy Decl.].  Restaurants throughout Mr. Hanna's patches regularly received a "No" on cleanliness, yet Mr. Hannan did not terminate or discipline anyone for that rating.  Former facilities manager, Joshua Amy, testified that he gave a "No" rating to one (1) out of three (3) Chipotle restaurants on a weekly basis.  See [Amy Decl.].

> Notably, the audits which Mr. Hannan claimed supported his termination decision were all audits conducted when the entire Chipotle management staff were in Las Vegas, NV for a company-wide conference.  See [Sousa Decl.].  Mr. Hannan knew that Mr. Sousa and all of his General Managers were not in New Mexico to monitor their employees.  Yet, Mr. Hannan conveniently relied on

these particular site visits to bolster his termination decision. The few photographs of items relied upon in Defendant's motion, out of hundreds of inspected items, do no [sic] demonstrate that the restaurant, as a whole, was unclean on a regular basis; nor do they prove that Mr. Sousa was failing to fulfill his job responsibilities. See [Sousa Decl.]; see also [Amy Decl.].

Response at 12 (citing Hannan Depo.; Amy. Decl; and Sousa Decl.). Chipotle Services, in support of its assertion, cites to the Termination Form, which states that the Cottonwood, Paseo del Norte, and San Mateo stores "received site audits" and "all failed to meet cleanliness standards." Termination Form at 3. Additionally, Chipotle Services cites to four emails from Chipotle Services facilities specialists in which the facilities specialists emails a summary of a site audit which states that the "overall cleanliness" at the time of the visit is a "no"; each email is sent to one of four stores, and each of the four stores receives a "no" as to the overall cleanliness. Email From Michael D. Angelo to nm.1919.Cottonwood at 2; Email From Michael D. Angelo to NM.1698.PaseodelNorte at 2; Email From Cruz Delgado to NM.3597.SanMateoMont at 2; Email From Cruz Delgado to nm.1714.abquptown at 2. Finally, Chipotle Services cites to the Sousa Depo., in which Sousa agrees that each set of photographs documenting cleanliness issues at the restaurants are either not acceptable or do not meet Chipotle Services' cleanliness standards. See Sousa Depo. at 94:23-95:7; id. at 95:12-21; id. at 96:21-25; id. at 97:4-9; 98:3-17; id. at 99:5-15.

Sousa does not address directly Chipotle Services' assertion. See D.N.M.L.R.-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."). Sousa contends that Chipotle Services' assertion does not "clarify which 'cleanliness standards' are at issue," but this contention lacks merit, given that each of the four site-audit emails rates the stores' overall cleanliness as a "no." Response at 12. Sousa's contention that "all four stores received passing scores" refers to the "site audit score" each email transmits as a percentage, not the overall cleanliness rating, which is not a numerical score, but a "yes" or a "no." Response at 12. To the extent, moreover, that Sousa's Response draws a distinction between "Chipotle's cleanliness standards" versus the information Hannan asks the facilities managers to include in their site audits, the Court declines to adopt this distinction: Hannan acts on Chipotle Services' behalf as its employee when he manages his subordinates, so there is no difference between Chipotle Services' cleanliness standards and Hannan's cleanliness standards. Finally, regarding Sousa's argument that the photographs of dirty items in the Motion "do not demonstrate that" Sousa's restaurants were regularly unclean, and do not prove that Sousa was failing to fulfill his job responsibilities: This is not a genuine factual dispute, because disputing a fact's implication -- here, that the dirty photos demonstrate that Sousa was failing to fulfill his job responsibilities -- does not dispute the fact. See Harjo v. City of Albuquerque, 326 F.Supp. 3d 1145, 1163 n.25 (D.N.M. 2018)(Browning, J.)("There is no factual dispute, because disputing an implication from a fact does not dispute the fact."). The purported implication to which Sousa objects bears on the fact's materiality, which the Court will consider in the Analysis Section. Accordingly, the Court deems the fact in the text -- that four of Sousa's restaurants fail to meet the overall cleanliness standard between March 21, 2022, and March 24, 2022 -- undisputed.

Chipotle Services' cleanliness standards.  See Motion at 8 (asserting this fact)(citing Sousa Depo. at 95:22-96:3; id. at 97:15-17; id. at 99:12-15); Sousa Depo. at 95:22-96:3; id. at 97:15-17; id. at 99:12-15.[65]

Hannan asked the facilities managers to give a store a yes or no regarding cleanliness, even if the restaurant receives a passing score from the site audit.  See Response at 12 (asserting this fact)(citing Amy Decl.); Amy Decl. ¶ 9, at 3.[66]  Hannan "regularly received site audit reports for

_____

[65]Sousa purports to dispute this fact, stating that Chipotle Services' assertion misstates the record, because Sousa testified only that "the isolated photographs" out of "hundreds and hundreds [of] items in the stores [] did not meet cleanliness standards." Response at 12.  It is true that in the Sousa Depo., the defense attorney questions Sousa about the photographs in the emails, specifically, and Sousa agrees that the photos "are not acceptable," Sousa Depo. at 96:1-3, "are not up to Chipotle's cleanliness standards," Sousa Depo. at 97:15-17, id. at 98:14-17, or "reflect conditions that are not up to Chipotle's Cleanliness standards, Sousa Depo. at 99:12-15.  Sousa's dispute with this fact appears to be that Sousa agrees at the Sosua Depo. that the pictures depict dirty conditions, and not that the restaurants themselves are necessarily dirty, as well.  This is a distinction without a difference, and is not a genuine dispute.  No reasonable jury could view pictures of trash and unclean conditions at a restaurant, and conclude, despite these pictures, that the restaurant, nonetheless, is clean.  Accordingly, the Court deems this fact undisputed.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968))("Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'").

[66]Sousa includes an additional fact in his Response, albeit without complying with D.N.M.L.R.-Civ. 56.1(b)'s instructions about where to include additional facts, that conflicts with Chipotle Services additional fact in its Reply, and to be fair to Sousa, the Court considers whether this fact is disputed.  Chipotle Services asserts that Hannan never instructed directly Amy "to give restaurants a yes or no for cleanliness.  Amy believes this decision was made by the facilities department and operational leadership." Reply at 15 (citing Amy Depo. at 116:15-19; id. at 118:1-6.  Chipotle Services, in support of its position, cites to the Amy. Depo., which states: "Q: So you have no recollection of Mr. Hannan personally requiring you to say yes or no as to whether a restaurant was clean.  Do you?  A: That's not how it was communicated to us.  No, I wouldn't know that." Amy Depo. at 116:15-19.  Sousa, in support of his position, cites to the Amy Decl., which states:

> When Mr. Han[n]an became the Director of our stores, he began requiring me to state 'Yes' or 'No' as to whether a store was clean, even if it passed inspection.

restaurants that, although they had passing scores per Chipotle's internal standards, would receive

negative marks for cleanliness by the inspecting facilities manager."  Response at 6 (asserting this

fact)(citing Amy Decl.).  See Amy Decl. ¶ 10, at 3.[67]  Amy, the former facilities manager, "gave a

---

> There was no guidance as to when a store should be given a 'Yes' or 'No' and
> the decision was largely based on my judgment.

Amy Decl. ¶ 9, at 3.  The Amy Depo.'s statement regarding whether Hannan personally instructs
Amy to give yes-or-no ratings to stores during internal audits -- "that's not how it was
communicated to us" -- contradicts the Amy Decl.'s assertion that Hannan himself asked the
facilities managers to give these stores.  Accordingly, the Court deems this fact disputed, and
includes Sousa's version of the fact in the text as an undisputed fact.  See Bell v. City of Tulsa,
2024 WL 1018528, *14 n.67 (D.N.M. Mar. 8, 2024)(Browning, J.)(citing Hunt v. Cromartie, 526
U.S. 541, 551 (1999))(accepting as true the plaintiff's version of the defendant's asserted fact).
Finally, the Court notes, again, that the sham affidavit doctrine is inapplicable here, for the reasons
stated in note 24, supra.

[67]Chipotle Services' Reply does not mention, contradict, address, or otherwise respond to
this fact; accordingly, the Court deems this fact undisputed, and includes it in the text as an
undisputed fact.  See Reply at 14 (stating that Chipotle Services "objects to the second sentence in
¶ 3," and not stating an objection or position as to ¶ 3's first sentence, which is where the above-
the-line assertion appears in Sousa's Response); D.N.M.L.R.-Civ. 56.1(b) ("All material facts set
forth in the response will be deemed undisputed unless specifically controverted.").
    Additionally, Sousa asserts that: "Despite relying on these negative remarks as grounds for
Mr. Sousa's termination, Mr. Hannan did not fire any other Field Leaders for these same ratings."
Response at 6-7 (not citing to the record).  Chipotle Services dispute this fact, stating:

> Chipotle objects to the second sentence in ¶ 3 to the extent Plaintiff seeks to
> claim that the four March 2022 audits indicating unclean restaurants were the
> sole reason for his termination.  Together with Plaintiff's unaddressed two-
> month long cockroach infestation, the poor audits added to and supported
> Hannan's decision to terminate Plaintiff's employment.  (See Chipotle's SUMF
> ¶ 38.)  Further, Plaintiff has not and cannot point to any other Field Leader who
> failed cleanliness on four restaurant audits in one week.

Reply at 14.  Chipotle Services observes accurately that Sousa does not cite to any record evidence
in support of Sousa's assertion.  See Reply at 14 ("Plaintiff has not and cannot point to any other
Field Leader who failed cleanliness on four restaurant audits in one week.").  Because Sousa does
not offer any evidence in support of his assertion, the Court does not include his assertion in the
text as an undisputed fact.    See Anderson Living Trust v. ConocoPhillips Co., LLC, --- F.Supp.
3d --- No. CIV 12-0039 JB\SCY, 2024 WL 4348998, at *5 n.27 (D.N.M. Sept. 30,

"No" rating to one (1) out of three (3) Chipotle restaurants on a weekly basis." Response at 12 (asserting this fact)(citing Amy Decl.). See Amy Decl. ¶10, at 3.[68] The audits that Sousa's stores fail occur "when the entire Chipotle management staff [is] in Las Vegas, NV for a company-wide conference." Response at 12 (asserting this fact)(citing Sousa Decl. ¶11, at 3). See Sousa Decl. ¶11, at 3.[69]

> f.    **An Employee at the UNM Location Submits Another Service Request About Cockroaches.**

As of March 21, 2022, Orkin, the pest-control vendor, produces a written report indicating that the pest issue is improving. See Response at 5 (asserting this fact)(citing Orkin Pest Control

---

2024)(Browning, J.)(declining to adopt the plaintiffs' assertion when "the Plaintiffs do not offer any competent evidence [] in support of their assertion).

[68]Chipotle Services purports to dispute this fact on the grounds that Sousa does not comply with D.N.M.L.R.-Civ. 56.1(b), but as the Court states previously, the Court will not disregard Sousa's otherwise sound assertions for noncompliance with the local rules. Sousa cites to the Amy Decl. in support of his assertion, which states that Amy "conducted approximately three site audits per week. I would estimate that one out of three sites, which passed the inspection, would receive a "No" for cleanliness." Amy Decl. ¶ 10, at 3. Sousa's assertion essentially restates the Amy Decl. ¶ 10, at 3. Chipotle Services does not point to any record evidence to dispute this assertion. See Reply at 8. Accordingly, even though Sousa includes this additional fact in his response to Chipotle Services' facts, contrary to D.N.M.L.R.-Civ. 56.1(b)'s instruction to include additional facts in a separate section, the Court deems this fact -- that Amy gave a no cleanliness rating to one out of three restaurants on a weekly basis -- undisputed.

[69]Chipotle Services purports to dispute this fact on the same grounds discussed in the preceding footnote. Sousa cites to the Sousa Decl. in support of his assertion, which states that "everyone from Chipotle" was in Las Vegas for a conference when the audits occurred in March of 2022. Sousa Decl. ¶ 11, at 3. Sousa's assertion essentially restates the Sousa Decl. at ¶ 11, at 3. Chipotle Services does not point to any record evidence to dispute this assertion. See Reply at 8. Accordingly, even though Sousa includes this additional fact in his response to Chipotle Services' facts, contrary to D.N.M.L.R.-Civ. 56.1(b)'s instruction to include additional facts in a separate section, the Court deems this fact -- that the audits occur while Sousa and Chipotle Services management is in Las Vegas -- undisputed.

Supplemental Inspection Report (dated March 21, 2022) at 2, filed June 17, 2024 (Doc. 64-8)("March 21 Orkin Report"); Text Message from Don Sousa to Seth (dated March 16, no year at 2:59 p.m.) at 2, filed July 24, 2024 (Doc. 73-9); and Email from Patrick Hannan to Amanda Connell (March 17, 2022 7:30 p.m.) at 2, filed June 17, 2024 (Doc. 64-11)); March 21 Orkin Report at 2.[70]  The March 21 Orkin Report does not state a conclusion as to whether there were structural issues with the building that contributed to the cockroach presence.[71]  On March 28,

_____

[70]Chipotle Services purports to dispute this fact, stating: "Chipotle objects to the third sentence in ¶ 1 on the grounds that the fact is not supported by the referenced citation."  Reply at 12 (not citing to the record).  The March 21 Orkin Report states:

> Spoke with manager on duty.  Alexis as well as GM Don last week.  Alexis stated they are just seeing 1 or 2 roaches randomly and mainly in dry storage areas and by the front line.  I inspected all areas and didn't see any current activity.  In speaking with Don last week he just requested a couple additional services to which I assured him we would provide, since the conversation we have already provided 2 additional services.  Both Don and Alexis have said that the issue has been drastically reduced and again still just seeing the 1 or 2 randomly.  They are doing a good job of keeping drains clean and evidently did an additional deep dive clean last Friday 3/18.

March 21 Orkin Report at 2.  Because the March 21 Orkin Report supports Sousa's assertion that "Orkin records indicated that the pest issue was improving as of March 21, 202[2]," and Chipotle Services does not offer any competent evidence in support of its position, the Court deems the fact in the text undisputed.

[71]Chipotle Services asserts: "On March 21, 2022, Orkin completed a walkthrough of the UNM location and confirmed there were no structural issues with the building that contributed to the infestation.  There were only dirty conditions."  Motion at 7 (citing March 21 Orkin Report at 2; Hannan Depo. at 64:4-10; id. at 65:4-64:11).  Sousa disputes this fact, stating: "[The March 21 Orkin Report] directly contradicts the assertions of UMF No. 33."  Response at 11 (citing the March 21 Orkin Report).  Chipotle Services, in addition to citing to the March 21 Orkin Report, also cites to the Hannan Depo., in which Hannan testifies that he recognizes the March 21 Orkin Report, Hanna Depo. at 64:4-10, and also testifies:

> Q:   And she says, at the top of this exhibit on the first page, "There were no structural issues found, only cleanliness opportunities."  Do you know as you sit here today what she was referencing?

2022, however, an employee submits another service request documenting a cockroach sighting at

the UNM restaurant.  See Motion at 9 (asserting this fact)(citing Email From Riley Reece to

Donald Sousa at 2 (dated March 28, 2022 11:38 a.m.), filed June 17, 2024 (Doc. 64-16)); Email

from Riley Reece to Donald Sousa at 2.[72]  While Sousa takes some steps to address the pest

---

A:    What she was specifically referencing no, but . . .

Q:    Okay.

A:    Cleanliness.

Hannan Depo. at 65:4-11.  Neither party quotes the entirety of the March 21 Orkin Report in their briefs, but both parties cite to it in support of their positions, "and there is no factual dispute about" its contents. Voter Reference Foundation, LLC v. Torrez, 727 F.Supp. 3d 1014, 1048 n.41 (D.N.M. 2024)(Browning, J.).   The March 21 Orkin Report does not support, however, Chipotle Services' assertion that only cleanliness issues, rather than structural issues, contributed to the infestation. The March 21 Orkin Report does not make any statements about the infestation's origins; rather, it describes the current level of cockroach activity at the restaurant, and recommends that the employees continue to keep the restaurant clean.  Additionally, the Hannan Depo. does not support Chipotle Services' assertion, because the cited testimony merely reads an email into the record that characterizes what the March 21 Orkin Report says.   See Hannan Depo. at 65:4-11.  "The Court includes the entirety of the [March 21 Orkin Report] in its Factual Background Section for the purposes of completeness.  The Court concludes, therefore, that the [March 21 Orkin Report's] content is not in dispute, as neither party has called into question its authenticity as it appears in the record."   Voter Reference Foundation, LLC v. Torrez, 727 F.Supp. 3d at 1048 n.41. Accordingly, the Court includes Sousa's assertion about the March 21 Orkin Report's contents in the text as an undisputed fact for this opinion's purposes, because the March 21 Orkin Report supports Sousa's assertion, and does not support Chipotle Services' assertion.  See Bell v. City of Tulsa, 2024 WL 1018528, *14 n.67 (D.N.M. Mar. 8, 2024)(Browning, J.)(citing Hunt v. Cromartie, 526 U.S. 541, 551 (1999))(accepting as true the plaintiff's version of the defendant's asserted fact).

[72]Sousa purports to dispute this fact by arguing that it is "not material to the claims or defenses in this lawsuit."  Response at 12.  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.

problem, such as texting Orkin to request additional services, Hannan decides that continuing to

employ Sousa created an unacceptable risk for Chipotle Services and its customers.  See Motion

at 9 (asserting this fact)(citing Hannan Decl. ¶¶ 19, 21, at 4); Hannan Decl. ¶¶ 19, 21, at 4.[73]

Hannan believes that Sousa "failed to uphold Chipotle's food safety and cleanliness standards and

failed to show any commitment or urgency in correcting the food-safety and cleanliness issues at

_____

See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning,
J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems
the fact undisputed.").   Accordingly, the Court deems this fact in the text -- that an employee
submits a service request about cockroaches at the UNM restaurant on March 28, 2022 --
undisputed.

[73]Chipotle Services asserts: "After almost two months of unaddressed dirty conditions at
Plaintiff's restaurants, and given Plaintiff's lack of commitment to resolving the issues, TD
Hannan made the decision that continuing to employ Plaintiff created an unacceptable risk for
Chipotle and its customers."  Motion at 9 (citing Hannan Decl. ¶ 19, 21, at 4).  Sousa successfully
disputes this fact, stating: "The issue did not go 'unaddressed.'  Plaintiff did everything he could
to resolve the issue.  The pest issue was not the real reason Mr. Hannan terminated Plaintiff."
Response at 13 (quoting Motion at 9)(citing Sousa Decl.).  Chipotle Services, in support of its
assertion, cites to the Hannan Decl., which states: "Given the lack of progress and Mr. Sousa's
lack of commitment to improving and resolving the dirty conditions of his restaurants, I made the
decision to terminate Mr. Sousa."  Hannan Decl. ¶ 19, at 4.  The Hannan Decl. also states that
Hannan believed Sousa's failures to uphold cleanliness standards and lack of urgency in correcting
his restaurants' cleanliness issues "created unnecessary risks for Chipotle and its customers."
Hannan Decl. ¶ 21, at 4.  Sousa, in support of his position, cites to the Sousa Decl., without
providing a pin cite.  Response at 13.
    First, the Sousa Decl. discusses the "steps" that Sousa was "taking to resolve the pest
problem."  Sousa Decl. ¶ 8, at 3.  Additionally, other record evidence to which Sousa cites
describes Sousa's efforts to address the pest problem: For example, Sousa texts an Orkin employee
to schedule additional services.  See Text Message from Don Sousa to Seth at 2.  Accordingly, the
Court deems Chipotle Services' assertion that Sousa did not address the pest problem and lacked
commitment in resolving the pest problem to be disputed, and modifies slightly the fact in the text
to adopt Sousa's version of the fact -- here, that Sousa did take some steps to address the pest
problem -- pursuant to its obligation to construe the evidence in the light most favorable to the
non-moving party.  See Bell v. City of Tulsa, 2024 WL 1018528, *14 n.67 (D.N.M. Mar. 8,
2024)(Browning, J.)(citing Hunt v. Cromartie, 526 U.S. 541, 551 (1999))(accepting as true the
plaintiff's version of the defendant's asserted fact).

his restaurants." Motion at 9 (asserting this fact)(citing Hannan Decl. ¶ 21, at 3; Termination Form at 2-3; Chipotle Services Employment Record at 3 (not dated), filed June 17, 2024 (Doc. 64-4); Hannan Depo. at 85:1-9).  See Hannan Decl. ¶ 19, at 4.[74]

g.    **Hannan Fires Sousa.**

On March 28, 2022, Hannan fires Sousa, and hands him two corrective action forms labeled "'Final Warning'" and one corrective action form labeled "'Termination.'"  Response at 5 (asserting this fact)(citing Employee Corrective Action Form at 2 (dated March 25, 2022), filed July 24, 2024 (Doc. 73-1)("Final Warning 1"); Employee Corrective Action Form at 2 (dated March 25, 2022), filed July 24, 2024 (Doc. 73-2)("Final Warning 2"); and Employee Corrective Action Form at 6 (dated March 25, 2022)("Termination Form")(Doc. 64-9)).  See Reply at 13 (stating that Chipotle Services does not dispute that Sousa received two corrective action forms and one termination form); Final Warning 1 at 2, Final Warning 2 at 2, Termination Form at 6.

---

[74]Sousa purports to dispute this fact, stating: "Plaintiff was terminated on March 28, 2022[,] because Mr. Hannan wanted the only individual older than him off his team, so that he could replace them with younger employees who were already in training for Field Leader positions." Response at 13 (citing Sousa Decl.; Rodriguez Decl; and Amy Decl.).  Sousa, in support of his position, cites to three declarations, without pin cites.  The Sousa Decl. states: "I believe Mr. Hannan used the pest issue at UNM as an excuse to get rid of me and to make room for Leidy Chaparro, who was already in training for my position."  Sousa Decl. ¶ 15, at 4.  Neither the Rodriguez Decl. nor the Amy Decl. discusses why Hannan fired Sousa.  Sousa's statement in the Sousa Decl. about his belief as to the reason of his termination does not create a genuine issue of material fact at the summary judgment stage.  See Argo v. Blue Cross & Blue Shield of Kan., 452 F.3d 1193, 1200 (10th Cir. 2006)(quoting Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)(observing that "at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded."); Fed. R. Civ. P. 56(e) (stating the personal knowledge requirement); Gonzales v. City of Albuquerque, 849 F.Supp. 2d 1123, 1140 n.12 (D.N.M. 2011)(Browning, J.)(holding that employee's affidavit stating a belief as to the reason for her termination does not create a genuine issue of material fact as to the reason for her termination). Accordingly, the Court deems this fact undisputed.

Hannan gave the corrective action forms and the termination form to Sousa because Caroline Barcelona, Hannan's human resources representative, instructed him to do so.  See Motion at 9 (asserting this fact)(citing Hannan Depo. at 98:16-20; Deposition of Caroline Barcelona at 29:23-30:9 (taken April 25, 2024), filed July 24, 2024 (Doc. 73-11)("Barcelona Depo.")); Hannan Depo. at 98:16-20; Barcelona Depo. at 29:23-30:9.[75]  "None of the employees who were responsible for the day-to-day operation at UNM were ever disciplined for any roach or cleanliness issues." Response at 5 (asserting this fact)(citing Hannan Depo. at 79:17-20); Hannan Depo. at 79:17-20.[76]

---

[75]Sousa purports to dispute this fact, stating: "Barcelona testified that she had no recollection of advising Mr. Hannan to create two, false corrective action forms."  Response at 13 (citing Barcelona Depo. at 28:5-8).  Sousa, in support of his position, cites to the Barcelona Depo., which states that Barcelona does not recall if she recommended that Hannan give Sousa two final warnings at the same time Hannan issued Sousa the Termination Form.  See Barcelona Depo. at 29:23-30:9. Chipotle Services, in support of its position, cites to the Hannan Depo., which states that Hannan gave Sousa a final warning and a termination form simultaneously because of Barcelona's guidance.  See Hannan Depo. at 98:16-20.  Chipotle Services also cites to the Barcelona Depo., which states that an employee might receive a final warning and a termination at the same time because "the idea of corrective action from my perspective is to document what has happened."  Barcelona Depo. at 29:23-30:9.  Barcelona's testimony that she does not recall recommending that Hannan give Sousa the warnings forms along with the termination form does not conflict with Hannan's testimony that Barcelona did recommend to him to do so.  A reasonable jury could not infer from Barcelona's lack of memory of the conversation that it did not occur. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968))("Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'").  Accordingly, the Court deems this fact undisputed.

[76]Chipotle Services contends that this fact is immaterial, stating: "Chipotle objects to the fourth sentence in ¶ 1 on the grounds that it is immaterial; Plaintiff himself would have been the manager responsible for issuing further discipline for the roach and cleanliness issues at the restaurant."  Reply at 12 (not citing to the record).  Arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M.

No one at Chipotle Services told Sousa that he was fired because of his age.  See Motion at 10 (asserting this fact); Response at 15 (stating that Sousa does not dispute this fact); Sousa Depo. at 41:17-21.  No one at Chipotle Services made any discriminatory or inappropriate comments to Sousa about his age.  See Motion at 10 (asserting this fact); Response at 15 (stating that Sousa does not dispute this fact); Sousa Depo. at 41:22-25.[77]  Sousa is not aware of any other Field Leader who Chipotle Services did not fire after failing to correct a pest infestation for two months.  See Motion at 11 (asserting this fact)(citing Sousa Depo. at 102:21-25); Sousa Depo. at

---

2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").  Accordingly, the Court deems this fact undisputed.

[77]Chipotle Services asserts that the "Plaintiff concedes he has no evidence of age discrimination aside from his replacement being younger."  Motion at 10 (citing Sousa Depo. at 42:3-43:7; 116:8-16).  This is argument is a legal one, and not a fact, and "legal arguments should not be set forth in a party's asserted fact section during summary judgment."  Chavez v. Cnty of Bernalillo, 3 F.Supp.3d 936, 949 n.4 (D.N.M. 2014)(Browning, J.)(citing Ruiz v. City of Brush, No. 05-897, 2006 WL 1816454, at *4 (D.Colo. June 30, 2006)(Nottingham, J.)).  Moreover, Sousa disputes this assertion, and cites to various pieces of circumstantial evidence, which, he asserts, evinces age discrimination.  See Response at 14.  Accordingly, the Court does not include this assertion in the text as an undisputed fact.
    Similarly, Chipotle Services asserts that the "Plaintiff concedes that he cannot identify anyone younger than him who was treated more favorably in regard to food safety or cleanliness standards."  Motion at 10 (citing Sousa Depo. at 103:6-10).  Again, this argument is a legal one, and not a fact; Sousa, moreover, disputes this assertion by citing to the same alleged circumstantial evidence of age discrimination.  See Response at 44 (restating Sousa's response to UMF No. 41).  Accordingly, the Court does not include this assertion in the text as an undisputed fact.
    Chipotle Services also asserts that the "Plaintiff concedes other Field Leaders were terminated for failing to address pest infestations."  Motion at 11 (citing Sousa Depo. at 102:5-20).  Sousa states, in response, that he "does not dispute UMF No. 45, in so far as the only other Field Leader who has been fired by Pat Hannan for pest issues was Tiffany Rodriguez, age 55."  Response at 15 (not citing to the record).  This assertion is duplicative, because the Court already has included facts regarding Rodriguez' termination in the Factual Background Section.  Accordingly, the Court does not include the assertion in the text a second time as an undisputed material fact.

102:21-25.[78]

## 6. **Chipotle Services Hires Leidy Chaparro to Fill Sousa's Position, and the UNM Location Fails a Third-Party Food Safety Audit Under Her Supervision**.

After Hannan fired Sousa, Chipotle Services filled Sousa's position with a woman named Leidy Chaparro, who was twenty-eight years old; "[b]y the time []Chaparro took over Plaintiff's prior position, TD Hannan and the UNM team had remedied the infestation at the restaurant." Motion at 9 (asserting this fact)(citing Hannan Depo. at 119:21-24; 126:20-25; and Deposition of Leidy Chaparro at 13:25-14:4 (taken April 23, 2024), filed June 17, 2024 (Doc. 64-18)("Chaparro Depo.")).  See Hannan Depo. at 119:21-24; 126:20-25; Chaparro Depo. at 13:25-14:4. [79]

---

[78]Sousa purports to dispute this fact, stating: Sousa "disputes UMF No. 46.  Sanchez had multiple pest issues and was never disciplined, much less terminated."  Response at 15 (citing Amy Decl.; and March 1, 2022, Orkin Ticket).  Sousa, in support of his position, cites to the Amy Decl. without a pin cite and the March 1, 2022, Orkin Ticket, but neither of these documents state that Sanchez' failed to correct a pest problem that lasted for two months.  Chipotle Services, in support of its position, cites to the Sousa Depo., which states that Sousa is not aware of any Field Leaders who failed to correct a two-month long pest infestation whom Chipotle Services retained. See Sousa Depo. at 102:21-25.  Sousa does not point to competent evidence supporting his position, and Chipotle Services supports its assertion with competent evidence.  Accordingly, the Court deems this fact undisputed.

Finally, Chipotle Sousa asserts: "Despite these concessions, Plaintiff now alleges a single claim of discriminatory termination based on age under the New Mexico Human Rights Act, NMSA 1978, § 28-1-7(A)."  This is argument is a legal one, and it is not a fact to which the Court can apply the law to determine if Chipotle Services is entitled to summary judgment.  Accordingly, the Court does not include this assertion in the text as an undisputed material fact.

[79]Sousa purports to dispute this fact, stating: "Plaintiff disputes that the conditions at the UNM store improved after Ms. Chaparro became Field Leader.  In fact, EcoSure audits indicate that the sanitary conditions at UNM substantially decreased, causing failed audit scores." Response at 13 (citing EcoSure Audit).  Chipotle Services, in support of its assertion, cites to the Chaparro Depo., in which Chaparro states that the cockroach infestation "had been dealt with" when she took the field leader position.  Chaparro Depo. at 13:25-14:4.  Sousa does not address directly Chipotle Services' assertion; Chipotle Services' assertion references specifically the cockroach infestation's status when Chaparro takes over, and does not make any assertion regarding the UNM store's overall cleanliness.  Sousa, therefore, has not complied with D.N.M.L.R.-Civ. 56.1(b)'s requirements.  See D.N.M.L.R.-Civ. 56.1(b) ("All material facts set

Subsequently, the UNM store failed an EcoSure audit, which is a third-party food safety audit conducted, unannounced, on a quarterly basis; Chipotle Services did not terminate Chaparro -- or anyone else -- for failing EcoSure audits.  See Response at 13-14 (asserting this fact)(citing Hannan Depo. at 130:15-131:12); Hannan Depo. at 130:15-131:12; Sousa Decl. ¶ 6, at 3.[80]

_____

forth in the Memorandum will be deemed undisputed unless specifically controverted."). Accordingly, the Court deems this fact undisputed.

[80]Chipotle Services purports to dispute this fact, but does not cite to any record evidence. See Reply at 9-10.  Sousa, moreover, in support of his assertion, cites to the Hannan Depo., which states: "Q: And it sounds like, because we just went through everyone you terminated, no one's been terminated for failing those EcoSure audits?  A: For failing an EcoSure audit specifically? No."  Hannan Depo. at 130:2-6.  Hannan's testimony supports Sousa's assertion that no one, including Chaparro, was fired for failing EcoSure audits.  Accordingly, the Court deems this fact undisputed.

Additionally, Sousa asserts: "After Mr. Sousa's departure, the UNM store failed EcoSure audits multiple times under the supervision of Leidy Chaparro, Mr. Sousa's replacement (28-years-old).  See [Hannan Depo.] at 130:15-131:11.  Yet, again, no one was terminated from the UNM store for these failed audits."  Response at 7 (citations included)(no additional citations to the record).  Chipotle Services disputes this fact, stating:

> Chipotle objects to and disputes the first sentence in ¶ 1 because there is no evidence any other Field Leader failed cleanliness on four audits in one week. Indeed, the Record only supports the contention that Leidy Chaparro, Plaintiff's replacement, failed, at most, one EcoSure audit in July 2022, which was approximately one month into her new role as Field Leader.  ([EcoSure Chipotle Food Safety Evaluation (dated July 25, 2022), filed July 24, 2024 (Doc. 73-15)("EcoSure Audit")]; see Exhibit R, Chaparro Dep., 16:1-9.)  Further, Plaintiff was not terminated just for poor cleanliness audits.  (See Chipotle's SUMF ¶ 38).

Reply at 14.  Sousa, in support of his assertion, cites to the Hannan Depo., which states:

> Q:    So while Mr. Sousa was employed, to your knowledge, did UNM ever fail an EcoSure audit?
>
> A:    I don't -- I don't recall, no.
>
> Q:    Since he left, has it failed its EcoSure audits?

A:      Yes.

Q:      How many times?

A:      I don't know.

Q:      More than once?

A:      Possibly.

Q:      More than twice?

A:      I don't know.

Q:      And it sounds like, because we just went through everyone you terminated, no one's been terminated for failing those EcoSure audits?

A:      For failing an EcoSure audit specifically?  No.

Q:      No one who's in charge of the UNM store has been terminated since Mr. Sousa left?

A:      No.

Hannan Depo. at 130:15-131:11.  Chipotle Services, in support of its position, cites to the EcoSure Chipotle Food Safety Evaluation at 2 (dated July 25, 2022), filed July 24, 2023 (Doc. 74-15)("EcoSure Evaluation"), which states that restaurant 2952 receives a 74% score.  EcoSure Evaluation at 2.  Additionally, Chipotle Services cites to the Deposition of Leidy Chaparro at 16:1-9 (taken April 23, 2024), filed September 27, 2024 (Doc. 80-2)("Chaparro Depo."), which states that Chaparro started the Field Leader position in April of 2022.  Chaparro Depo at 16:1-9.  Sousa does not support his assertion that the UNM store failed multiple EcoSure audits with competent evidence.  Hannan testifies that the store failed one audit, but he states that he does know how many audits it failed.  See Hannan Depo. at 130:15-131:11.  Hannan's statement that the store "possibly" failed more than one audit is insufficient to support Sousa's assertion that the store failed multiple audits.  Hannan Depo. at 130:23:34.  When a witnesses testifies that something is "possible," that testimony alone does not create an undisputed fact.  Accordingly, the Court declines to adopt Sousa's assertion that the UNM store failed multiple audits under Chaparro's leadership.

7.      **Edwin Sanchez, a Field Leader in Arizona, Oversees Restaurants With Pest and Cleanliness Issues From 2021 Through 2023.**

Sanchez, an Arizona Field Leader in his thirties who supervised one of Rodriguez' stores before Chipotle Services transferred it to Rodriguez, "had multiple issues of pest problems and cleanliness issues in his patch from 2021 through 2023. Records reflect roach [sightings]; fruit flies (which only occur out of cleanliness problems); and persistent rodent sightings." Response at 6 (asserting this fact)(citing Declaration of Joshua Amy (taken July 22, 2024), filed July 24, 2024 (Doc. 73-10)("Amy Decl."); Email from Joshua Amy to teamspusa@aol.com (July 11, 2024 12:23 p.m.), filed July 24, 2024 (Doc. 73-12)("July 11, 2024, Amy Email"); and Orkin Service Ticket, dated March 1, 2022, filed July 24, 2024 (Doc. 73-13)("March 1, 2022, Orkin Ticket")); Amy Decl. ¶¶ 11-16, at 3-4; July 22, 2024, July 11, 2024, Amy Email at 2; March 1, 2022, Orkin Ticket at 2-6.[81] The problems at Sanchez' stores include the following: At Store 1684, a rat entered

---

[81] Chipotle Services purports to dispute this fact, stating:

> Chipotle objects to the first sentence in ¶ 2 on the grounds that the facts referenced are not supported by any citation to the record. Chipotle further objects to the first sentence in ¶ 6 [sic] for lack of foundation and personal knowledge; there is no record evidence supporting these facts . . . The only evidence of pest issues in the record at Sanchez's restaurants were related to structural issues or Hannan was not aware of them or both (see chart below in Section II.) ( . . . Rodriguez Dep., 86:4-16, 98:11-17; see also . . . Amy Dep., 90:25-91:7, 94:14-19, 97:2-9, 109:1-3, 122:2-16). Chipotle objects to the second sentence in ¶ 2 on the grounds that Plaintiff fails to provide a citation to the record supporting his contention. Chipotle further disputes the second sentence in ¶ 2 on the grounds that there is no evidence in the record that Hannan knew of the referenced pest and cleanliness issues in Edwin Sanchez's restaurants. ( . . . Rodriguez Dep., 86:4-16, 98:11-17; see also . . . Amy Dep., 94:14-19, 97:2-9, 104:5-105:15, 108:16-109:3, 122:2-16).

Reply at 13 (ellipses added). First, regarding Chipotle Services' objection that Sousa does not support his assertion with a citation to record evidence, Sousa includes his citations after ¶ 2's second sentence, and both the first and second sentences pertain to the same topic: pest problems

the store through holes in the roof.  <u>See</u> Amy Depo. at 89:16-91:7.  At Store 1726, an employee

submitted a work order after a cockroach sighting.  <u>See</u> <u>Amy</u> Depo. at 91:16-93:20. At Store 1767,

Orkin observed cockroaches on October 12, 2021, returned on November 5, 2021, but did not see

any cockroaches, and returned on March 1, 2022, to address a rat sighting.  <u>See</u> Orkin Invoice at

4 (dated October 12, 2021), filed July 24, 2024 (Doc. 73-13); Orkin invoice at 3 (dated November

5, 2021), filed July 24, 2024 (Doc. 73-13); Orkin Invoice at 2 (dated March 1, 2022), filed July 24,

2024 (Doc. 73-13).   At Store 923, Amy, the former facilities employee, observed fruit flies and a

"handful" of roaches.  Amy Depo. at 106:3-107:9.  At Store 898, there were "constant pest control

issues;" Amy observed ants, cockroaches, and crickets.  Amy Depo. at 98:8-102:25.   When

---

in Sanchez' stores.  <u>See</u> Response at 6 (citing Amy Decl. ¶¶ 11-16, at 3-4; July 22, 2024, Amy Email at 2; and March 1, 2022, Orkin Ticket at 2-6).  The July 22, 2024, Amy Email, moreover, supports Sousa's assertion, because it describes Amy's observations of the cleanliness problems at Sanchez' stores.  Accordingly, the Court concludes that Sousa supports his assertion with a citation to the record.

Second, regarding Chipotle Services' personal-knowledge objection, the Amy Decl. states that Amy received work orders from Sanchez' stores, <u>see</u> Amy Decl. ¶ 12 at 3, and that Amy recalls a "specific incident (sometime approximately in 2021) where an issue involving a pest persisted at the Cityscape store in Phoenix," Amy Decl. ¶ 12 at 3.  Amy's testimony that he personally received work orders about pest issues and that he remembers specific instances of pest problems at several of Sanchez' stores, satisfies the personal knowledge requirement of rule 56(c)(4) of the Federal Rules of Civil Procedure and rule 602 of the Federal Rules of Evidence. <u>See</u> Fed. R. Civ. P. 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."); Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").  The Court, therefore, concludes that Chipotle Services' personal-knowledge objection lacks a basis in the relevant facts and applicable law.

Third, regarding Chipotle Services' assertion that the "only evidence of pest issues in the record at Sanchez's restaurants were related to structural issues or Hannan was not aware of them or both," Reply at 13, this assertion does not address directly Sousa's facts.  Sousa's assertion does not discuss why pests entered Sanchez' restaurants, and it does not discuss Hannan's knowledge of the pests at Sanchez' restaurants.  <u>See</u> Response at 6.  Accordingly, the Court deems Sousa's proposition, pertaining to the existence of pest problems at Sanchez' stores, undisputed, and cites to the record evidence to describe in more detail the problems at each store.

Rodriguez, moreover, "inherited Mr. Sanchez's store, No. 861 (the one which she was terminated for within months of it being transferred to her), the store was filthy."  Response at 6 (citing Rodriguez Decl.)(asserting this fact); Rodriguez Decl. ¶ 9, at 3.[82]  Chipotle Services promoted Sanchez in November of 2023.  See Response at 6 (asserting this fact)(citing Hannan Depo. at 7-13); Hannan Depo. at 46:7-17.[83]

---

[82] Chipotle Services purports to dispute this fact, stating: "Chipotle objects to the third sentence in ¶ 2 because it improperly implies it was Sanchez's restaurant.  Restaurant number 861 was Rodriguez's restaurant.  Sanchez helped oversee it while she was on leave."  Reply at 13 (citing Rodriguez Depo. at 74:5-19; 47:1-8).  There is no factual dispute, because disputing a fact's implication does not dispute the fact.  See Harjo v. City of Albuquerque, 326 F.Supp. 3d 1145, 1163 n.25 (D.N.M. 2018)(Browning, J.)("There is no factual dispute, because disputing an implication from a fact does not dispute the fact.")   The purported implication to which Chipotle Services refers bears on the fact's materiality, which the Court will consider in the Analysis section.  Accordingly, the Court deems this fact undisputed.

[83]Sousa asserts: "Since his termination, Mr. Sousa has been made aware of various pest and cleanliness issues at other Chipotle stores operated by other Field Leaders under the direction of Mr. Hannan.  Not only were none of these Field Leaders terminated or even disciplined; they were promoted."  Response at 6 (citing Hannan Depo. at 7-13).  Chipotle Services purports to dispute this fact stating:

> Chipotle objects to the first sentence in ¶1 on the grounds that the facts referenced are not supported by any citation to the record.  Chipotle further objects on the grounds that Plaintiff has proffered no evidence that any pest issue or cleanliness issues were of comparable severity to Plaintiff's misconduct or that Hannan was even aware of the issues.  Chipotle objects to the second sentence in ¶1 because it is not supported by the cited, or any other, record evidence.  Further, any facts cited are not relevant or material given that there is no evidence that the alleged issues were similar or that Hannan was aware of the issues.

Reply at 13 (citing Rodriguez Depo. at 86:4-16; id. at 98:11-17; Amy Depo. at 90:25-91:7; id. at 94:14-19; id. at 97:2-9; id. at 109:1-3, and id. at 122:2-16).  With regards to the first sentence of Sousa's assertion, and Chipotle Services' objection that it lacks support in the record, Sousa cites elsewhere to record evidence establishing the existence of cleanliness issues at Leidy Chaparro's and Edwin Sanchez' stores -- two Field Leaders under Hannan's supervision -- and the Court includes these issues in the text as undisputed facts for this opinion's purposes.  The first sentence of Sousa's assertion that this footnote addresses, therefore, is duplicative of other facts that the Court has already addressed.  Chipotle Services' other objections to this assertion are arguments

## PROCEDURAL BACKGROUND

Sousa initiated this action against Chipotle Mexican Grill in New Mexico State court on August 11, 2023.   See Complaint for Violations of the New Mexico Human Rights Act, ¶¶ 2-18, at 1-2, dated August 11, 2023, filed August 11, 2023, in State Court, filed September 20, 2023, in federal court (Doc. 1-3)("Complaint").   Sousa's only claim is that Chipotle Mexican Grill discriminated against him on the basis of age, in violation of the NMHRA.  See Complaint ¶ 18, at 2.  Chipotle Services removed the Complaint to federal court on September 20, 2023.  See Notice of Removal, filed September 20, 2023 (Doc. 1).  The Notice of Removal asserts that the basis for federal jurisdiction is 28 U.S.C. § 1332(c)(1), because Chipotle Services is a citizen of Delaware

---

about the legal significance of Chaparro's and Sanchez' cleanliness issues.   Legal arguments, however, "should not be set forth in a party's asserted fact section during summary judgment." Chavez v. Cnty of Bernalillo, 3 F.Supp.3d 936, 949 n.4 (D.N.M. 2014)(Browning, J.)(citing Ruiz v. City of Brush, No. 05-897, 2006 WL 1816454, at *4 (D.Colo. June 30, 2006)).  Accordingly, the Court deems this fact undisputed, but does not include it in the text, because it is duplicative of other facts.

    With regards to the second sentence of Sousa's assertion, that states that Chipotle Services promoted other Field Leaders with pest and cleanliness issues, Sousa, in support of his assertion, cites to the Hannan Depo. at 7-13.  This is not a proper citation form, but the Court notes that the Hannan Depo. at 46:7-17 supports this assertion.  The Hannan Depo. states that Chipotle Services promoted Sanchez to Team Director in November of 2023.   See Hannan Depo. at 46:7-17. Chipotle Services, in support of its position, does not cite to any conflicting record evidence, and, instead, argues that Sousa's assertion lacks support in the record.  The Hannan Depo. supports Sousa's assertion.  Regarding Chipotle Services' assertion, moreover, that this fact is immaterial: arguing that a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact.  See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.)("Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis.").  If necessary, the Court will address materiality in the Analysis, but will deem the fact undisputed for the Factual Background section.  See Walton v. N.M. State Land Off., 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.)("[O]bjecting to an asserted fact as immaterial in response to an asserted fact effectively deems the fact undisputed.").   Accordingly, the Court deems this fact undisputed.

and California, Sousa is a citizen of New Mexico, and the amount in controversy exceeds $75,000.00. See Notice of Removal at 2-3. Sousa amended his complaint on December 4, 2023, to name Chipotle Services as the proper defendant. See First Amended Complaint for Violations of the New Mexico Human Rights Act, filed December 4, 2023 (Doc. 23)("Amended Complaint).

      1.    **Chipotle Services' Motion for Summary Judgment.**

In the Motion, Chipotle Services argues that it is entitled to summary judgment, because Sousa has no direct or circumstantial evidence of age discrimination. See Motion at 12. Chipotle Services states that New Mexico courts use the federal McDonnell Douglas framework to interpret the New Mexico Human Rights Act, NMSA § 28-1-7-(A) ("NMHRA"). See Motion at 12-13. Moreover, Chipotle Services states that it assumes for the Motion's purposes that Sousa can make out a prima facie case of age discrimination under the McDonnell Douglas framework. See Motion at 13.

Chipotle Services contends, however, that Sousa cannot prove that Chipotle Services' justification for firing Sousa is pretextual. See Motion at 13-14. According to Chipotle Services, it terminated Sousa because he failed to keep his restaurants clean and safe. See Motion at 14. "No rational factfinder," Chipotle Services contends,

> could conclude that it is 'unworthy of belief' or 'incoherent' for an upper-level management employee to be terminated for failing to appropriately assist his team with remedying a two month long cockroach infestation and for failing to meet cleanliness standards on four site audits -- all within the span of two months.

Motion at 14. Chipotle Services emphasizes that the pretext inquiry examines the facts as they appear to Hannan as the decision-maker. See Motion at 14. Hannan, Chipotle Services contends, decided to terminate Sousa to mitigate the risk Sousa was causing the company. See Motion at

14.  Chipotle Services concludes by stating that nothing in the record could lead a rationale factfinder to believe that the reason provided for Sousa's firing is unreasonable or unworthy of belief.  See Motion at 15.

**2.  Sousa's Response.**

In Sousa's Response, he contends that pretext is generally a jury question under New Mexico law.  See Response at 17 (citing Juneau v. Intel Corp., 2006-NMSC-002, ¶ 23, 139 N.M. at 12, 127 P.3d at 548).  Sousa quotes the United States Court of Appeals for the Tenth Circuit at length in describing how plaintiffs may make a showing of pretext, listing the following evidence:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false . . . (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly situated employees who violated work rules of comparable seriousness.

Response at 17 (quoting Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)("Kendrick")(ellipses in the Response, but not in Kendrick)).  Sousa states, moreover, that a plaintiff can demonstrate discriminatory intent through a pattern of an employer terminating older employees.  See Response at 17 (citing Greene v. Safeway Stores, Inc., 98 F.3d 554, 561 (10th Cir. 1996)).

Sousa contends that he has met his prima facie burden to establish age discrimination, because he was fifty-seven when Chipotle Services fired him, he was qualified for his role, and Chipotle Services replaced him with a woman in her twenties.  See Response at 18.  He also contends that there are "numerous issues of fact regarding pretext that preclude summary

judgment," including:

> that Mr. Hannan 1) created false written warnings that never provided to Plaintiff until his termination; 2) treated Mr. Sousa (and Ms. Rodriguez) differently from other similarly [] situated employees under the age of 30, whom also had pest problems and/or cleanliness issues in their stores; 3) created false issues regarding [the] extent of the pest problem at UNM and cleanliness problems; 4) demonstrated a pattern of terminating older employees, back-to-back; and 5) reacted disproportionately by terminating Mr. Sousa regarding the alleged infractions, without any opportunity for improvement.

Response at 18. Sousa first turns to Hannan's warnings that Hannan give to Sousa; Sousa characterizes these as "fake." Response at 18. These warnings are evidence of pretext, Sousa contends. See Response at 18. Sousa asserts that Chipotle Services created the warnings "to create the false appearance that Mr. Hannan had utilized progressive discipline when he had not." Response at 19. Sousa states that while Barcelona, the human resources employee, "testified the records may have been created to 'document'" Sousa's conduct, this explanation, Sousa asserts, "would only make sense if the written warnings were provided to Mr. Sousa at or near the time when the documented activity occurred." Response at 19 (quoting Barcelona Depo. at 28:18). Sousa states that the warnings' timing demonstrates either that Chipotle Services uses a progressive discipline policy that should have been -- but was not -- followed, or that Hannan created the warnings to protect himself and his decision to fire Sousa. Response at 19.

Second, Sousa argues that Hannan treated older employees differently from younger, similarly situated employees, and this difference in treatment is evidence of pretext. See Response at 19. Sousa contends that Sanchez' stores "had roach issues, rat problems, and fruit flies," and were not clean. Response at 20. The level of severity of issues in Sanchez' stores, Sousa contends, and whether they are comparably severe to the issues at either Sousa's or Rodriguez' stores, is a jury question. See Response at 20. Sousa also asserts that Hannan did not fire Chaparro for failing

an EcoSure audit at the UNM store; he contends this raises fact questions about discriminatory intent. See Response at 20.

Third, Sousa contends that there are fact issues "regarding the degree of the pest issue at the UNM store; the length of time it persisted; and the overall cleanliness of [] Sousa's stores." Response at 20. He asserts that these factual disputes raise the question whether the reasons for Sousa's termination "were true, or whether they were exaggerated and/or falsified in an effort to justify [] Sousa's unlawful termination." Response at 20. Fourth, Sousa contends that Hannan's proffered reason for firing Sousa, Sousa's pest issues, is "itself" indicative of pretext, because Hannan did not fire any younger field leaders on his team for pest issues. Response at 21. Fifth, Sousa asserts that Hannan's decision to fire Sousa without giving him the opportunity to improve indicates pretext. See Response at 21. According to Sousa, "[t]he extreme sanction of termination," given Sousa's long tenure with Chipotle Services and the fact that pest problems are common in the restaurant industry, "creates an issue of fact regarding pretext." Response at 21.

### 3.    Chipotle Services' Reply.

In its Reply, Chipotle Services first asserts that Sousa's Response does not comply with D.N.M.L.R.-Civ. 56.1(b), asks the Court not to consider Sousa's additional facts, and asks the Court to deem all of Chipotle Services' facts undisputed. See Reply at 3-4. After responding to Sousa's additional facts, Chipotle Services, pursuant to rule 56(c)(4) of the Federal Rules of Civil Procedure, objects to the introduction of the Rodriguez Decl. and the Amy Decl. See Reply at 17. Chipotle Services states that "Amy's and Rodriguez's declarations are not based on their personal knowledge, but they also admitted many statements in the declarations are untrue." Reply at 17. Subsequently, Chipotle Services makes line-by-line objections to both declarations' assertions.

See Reply at 18-21.

Second, Chipotle Services argues that there is no evidence that the forms Hannan provides to Sousa are false.  See Reply at 22.  Chipotle Services notes that Sousa's argument how the forms demonstrate pretext lacks supporting legal authority.  See Reply at 22.  Chipotle Services also asserts that Sousa confirms that the forms' information is correct.  See Reply at 22.  Furthermore, Chipotle Services states that, even if Chipotle Services should have given Sousa the corrective action forms earlier but did not do so, this mistake would not support an inference of pretext.  See Reply at 24.  Moreover, according to Chipotle Services' legal authority, when progressive discipline is discretionary, the absence of progressive discipline is not evidence of pretext.  See Reply at 24 (citing Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1291 (10th Cir. 2013)("Lobato").  Also, Chipotle Services states that, because the Court must examine the facts as they appear to Hannan, it was reasonable for Hannan to provide Sousa with verbal warnings, given that Sousa was a high-level employee.  See Reply at 24.

Third, Chipotle Services addresses Sousa's comparator evidence, and asserts that Sanchez' and Chaparro's pest issues are not "comparable in any way to the two-month long cockroach infestation and a finding of four dirty restaurants in one week that led to Plaintiff's termination."  Reply at 25.  Chipotle Services contends that Sousa cannot prove that "Sanchez or Chaparro experiences similar or worse pest infestations or cleanliness issues in their restaurants or that Hannan was aware of those issues."  Reply at 25.  Chipotle Services, moreover, emphasizes the difference between an infestation and a pest sighting.  See Reply at 26.  There is no evidence, Chipotle Services contends, that "demonstrates any Field Leader under 40 years old had a two-month long cockroach infestation, like Plaintiff, or a severe cockroach infestation that forced

- 59 -

Chipotle to replace equipment, like Rodriguez."  Reply at 29.

Fourth, Chipotle Services states that Sousa does not point to any evidence supporting his contention that there are factual issues regarding the degree of the cockroach infestation.  See Reply at 30.   Fifth, Chipotle Services contends that there is no evidence Hannan engaged in a pattern of terminating older employees.  See Reply at 30.  Chipotle Services asserts that multiple terminations "of individuals from the same protected class are not sufficient to show pretext absent other evidence of discriminatory animus, which is not present here."   Reply at 31 (citing Enderwood v. Sinclair Broad. Grp., Inc., 233 F. App'x. 793, 800 (10th Cir. 2007)(unpublished)). Chipotle Services contends that Chipotle Services terminated Rodriguez only "after failing to improve her performance while on a performance improvement plan and for failing to appropriately address an extraordinary and unusual pest infestation that required replacing several pieces of equipment in the restaurant."  Reply at 31.

Sixth, Chipotle Services contends that there is no evidence that Hannan acted disproportionately in terminating Sousa.  See Reply at 31. Chipotle Services asserts that this line of argument lacks legal support and that, regardless, "Hannan's actions were entirely appropriate." Reply at 32.  Chipotle Services observes that Hannan discussed the pest issues with Sousa for months before Hannan fired Sousa, which "precludes any argument that Plaintiff was not warned or was treated too harshly."  Reply at 32.

4.    __The Hearing.__

At the hearing, Chipotle Services states that the motion turns on comparator evidence.  See Draft Transcript of Hearing at 4:4-6 (taken October 24, 2024)(Bulat)("Tr.").[84]  Chipotle Services contends, however, that "none of the field leaders' actions amounted to anything of comparable seriousness."  Tr. at 4:25-5:1 (Bulat).  Chipotle Services also contends that Sousa was fired, because his stores were not clean, "and the lack of cleanliness drew in the cockroaches."  Tr. at 9:20-21 (Bulat).  Moreover, Chipotle Services emphasizes that Sousa "can't point to any other field leader who failed cleanliness audits four times in a single week."  Tr. at 11:18-21 (Bulat).  Chipotle Services also asserts that, if "Sousa can't show [] Hannan was aware of alleged misconduct, that can't be factored into the pretext analysis when it comes to showing that [] Hanna's reasons for [] Sousa's termination were unworthy of belief."  Tr. at 12:17-20 (Bulat).

The Court inquires as to the warning documents, stating that "they do look a little bit kind of cooked up."  Tr. at 16:21-22 (Court).  Chipotle Services responds by stating that the forms are not meant to be a warning, but, rather, to document what occurred.  See Tr. at 17:6-8 (Bulat).  Chipotle Services also asserts that Barcelona instructed Hannan to draft the documents, and a non-decision-maker's actions are irrelevant to the pretext analysis.  See Tr. at 18:15-19 (Bulat).  Finally, Chipotle Services asserts that Rodriguez' termination is evidence that Chipotle consistently addresses pest infestations in the same way.  See Tr. at 19:1-10 (Bulat).

Next, Sousa contends that there are other issues of pretext that "don't rely on comparator evidence."  Tr. at 23:2-6 (Jones).  Sousa also contends that the warning documents go to Hanna's

---

[84]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

credibility and argues that Hannan should have followed progressive discipline, but did not follow progressive discipline and, to cover his tracks, created "false warnings." Tr. at 23:15-24:3 (Jones). Sousa also contends that he disputes some of the warnings' information. See Tr. at 24:1-9 (Jones). He also contends that he has proven that "other field leaders who are in the same or similar position of Mr. Sousa also had cleanliness problems." Tr. at 24:16-18 (Jones).

Sousa contends, moreover, that Chipotle Services discriminates on the basis of age, because younger employees will do things that the older ones will not do, such as "get on their hands and knees and clean these restaurants." Tr. at 27:1-12 (Jones)(Court). He also contends that Chipotle Services' reliance on the cleanliness audits "was a constructed effort to again justify his decision to terminate him by going through and cherry picking these site audits." Tr. at 29:15-25 (Jones). Additionally, Sousa states that whether the reason for termination is proportionate to the alleged infraction is evidence of pretext. See Tr. at 32:10-15 (Jones).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Schs., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(alteration in Herrera v. Santa Fe Pub. Schs.)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Celotex").

Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting

evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)(internal quotations and brackets omitted).

Plustwik v. Voss of Nor. ASA, No. 11-0757, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(emphasis added). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[85] Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Liberty Lobby"). In American Mechanical Solutions, LLC v. Northland Piping, Inc., 184 F. 3d 1030 (D.N.M. 2016)(Browning, J.), the Court granted summary judgment for the defendant when the plaintiff did not offer expert evidence supporting causation or proximate causation in its breach-of-contract or breach-of-the-implied-warranty-of-merchantability claims. See 184 F. 3d at 1075-78. The Court reasoned that the plaintiff could prove neither the breach-of-contract claim's

---

[85]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court, dissented in Celotex, this sentence is widely understood to be an accurate statement of the law. See 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

causation requirement nor the breach-of-the-implied-warranty-of-merchantability claim's proximate-causation requirement with mere common knowledge, see 184 F. Supp. 3d at 1073, and so New Mexico law required that the plaintiff bolster its arguments with expert testimony, see 184 F. Supp. 3d at 1067, which the plaintiff had not provided, see 184 F. Supp. 3d at 1075.  The Court determined that, without the requisite evidence, the plaintiff failed to prove "an essential element of the nonmoving party's case . . . render[ing] all other facts immaterial."  Am. Mech. Sol., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (quoting Plustwik v. Voss of Nor. ASA, No. 11-00757, 2013 WL 1945082, at *1 (D. Utah 2013)(Sam, J.)).

Thus, if a plaintiff has the burden of proof, and the plaintiff has no competent evidence, the defendant, even without any competent evidence itself, may secure summary judgment by pointing out the plaintiff's lack of competent evidence.  See Celotex, 477 U.S. at 323-25 (providing that summary judgment is proper where a plaintiff lacks evidence on an essential element of its case); Am. Mech. Sols., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (granting summary judgment because plaintiff lacked evidence on causation); Morales v. E.D. Entyre & Co., 382 F. Supp. 2d 1252, 1272 (D.N.M. 2005)(Browning, J.)(granting summary judgment because plaintiff lacked competent evidence that the defendants defectively manufactured an oil distributor).  A conclusory assertion that the plaintiff lacks evidence is insufficient, however, to secure summary judgment; the defendant must make some evidentiary showing that the plaintiff lacks competent evidence.  See Halley v. Huckaby, 902 F.3d 1136, 1143 (10th Cir. 2018)(stating that summary judgment may be warranted if the movant notes a lack of evidence for an essential element of the claim).  See also 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[1][b][iv], at 56-109 to -111 (3d ed. 2018).

- 64 -

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (citing Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Liberty Lobby, 477 U.S. at 259. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).

A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)(McConnell, J.)). "In

responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. v. Omer, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Liberty Lobby, 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Liberty Lobby, 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)("Schuylkill")); Vitkus v. Beatrice Co., 11 F.3d at 1539.

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [First Nat. Bank of Ariz. v.] Cities Service,[] 391 U.S. [253], 288-[89] . . . . If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 . . . (per curiam), or is not significantly probative, Cities Service, . . . at 290 . . . summary judgment may be granted.

Liberty Lobby, 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Liberty Lobby, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary

judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Liberty Lobby, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); Tolan v. Cotton, 572 U.S. 650, 651 (2014). Fourth, the court cannot decide any credibility issues. See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. In Scott v. Harris, 550 U.S. 372, the United States Supreme Court concludes that summary judgment is appropriate where video evidence clearly contradicted the plaintiff's version of the facts. See 550 U.S. at 378-81. The Supreme Court explains:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of

events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (alterations in Scott v. Harris)(emphasis in Liberty Lobby).

The Tenth Circuit applies this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explains:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (second alteration in Thomson v. Salt Lake Cty., third and fourth alterations in York v. City of Las Cruces).  "The Tenth Circuit, in Rhoads v. Miller, [352 F. App'x 289 (10th Cir. 2009),] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony." Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.), aff'd, 499 F. App'x 771 (10th Cir. 2012).

Parties may allege new claims in motions for summary judgment.  See Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991).  When a party raises a new claim in a motion for summary judgment, a court treats the motion for summary judgment as a request to amend the complaint pursuant to rule 15 of the Federal Rules of Civil Procedure.  See Viernow v. Euripides Dev. Corp., 157 F.3d 790 n.9 (10th Cir. 1998).  The Tenth Circuit states:

> [A]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."

Evans v. McDonald's Corp., 936 F.2d at 1090-91 (quoting 4 Charles A. Wright & Arthur R. Miller,

Federal Practice and Procedure § 1219, at 94 (4th ed. 2021)("Wright & Miller")).   While the

purpose of "fact pleading" is to give defendants fair notice of claims against them "without

requiring the plaintiff to have every legal theory or fact developed in detail before the complaint

is filed and the parties have opportunity for discovery," plaintiffs may not "wait until the last

minute to ascertain and refine the theories on which they intend to build their case."   Evans v.

McDonald's Corp., 936 F.2d at 1091.

## LAW REGARDING THE MCDONNELL DOUGLAS FRAMEWORK FOR EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on

race, color, religion, sex, or national origin."   Brown v. Gen. Servs. Admin., 425 U.S. 820, 825

(1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3).   Title VII of the Civil Rights Act of 1964 ("Title

VII") prohibits employers from failing or refusing to hire or discharging any individual, or

otherwise discriminating against any individual with respect to his or her compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin.   See Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6

(D.N.M. Dec. 31, 2007)(Browning, J.)(quoting 42 U.S.C. § 2000e-2(a)(1)).   For Title VII claims,

at the summary judgment stage, the nonmoving party must come forth with some proof of

discrimination.   The nonmoving party "may carry this burden either by presenting direct evidence

of the employer's discriminatory intent or by presenting circumstantial evidence creating an

inference of a discriminatory motive using the tripartite [McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973)("McDonnell Douglas"] burden shifting analysis."   Riggs v. AirTran

Airways, Inc., 497 F.3d 1108, 1114 (10th Cir. 2007)(citing Danville v. Reg'l Lab Corp., 292 F.3d

1246, 1249 (10th Cir. 2002))(alterations added)("Riggs").

1.    **Analyzing Circumstantial Evidence Using McDonnell Douglas' Framework.**

Under the McDonnell Douglas framework, a plaintiff must set forth a prima-facie case of discrimination.  See Riggs, 497 F.3d at 1114.  If the plaintiff establishes a prima-facie case for any of his discrimination claims, the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its decision.  See Riggs, 497 F.3d at 1114-15.  "Once the employer identifies a legitimate reason for its action, the burden shifts back to the employee to prove that the proffered legitimate reason was a pretext for discrimination."  Riggs, 497 F.3d at 1114-15 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000)).  At the summary judgment stage, "the parties bear burdens of production rather than burdens of persuasion."  Riggs, 497 F.3d at 1115 (citing Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1113 (10th Cir. 2007)("Timmerman")).

In a termination case, a plaintiff can establish a prima facie case of age discrimination by showing that he or she was: (i) "within the protected class of individuals 40 or older"; (ii) "performing satisfactory work"; (iii) "terminated from employment"; and (iv) "replaced by a younger person, although not necessarily one less than 40 years of age."  Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008).  After the plaintiff establishes a prima facie case, the burden shifts to the defendant, and the defendant can satisfy its burden by articulating a legitimate, non-discriminatory reason for firing the plaintiff.  See Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1425 (10th Cir. 1993)(noting that the defendant "satisfies its burden merely by raising 'a genuine issue of fact as to whether it discriminated against the plaintiff.'")(quoting Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981)).

- 70 -

"Once the defendant meets its burden of production by offering a legitimate rationale in support of its employment decision, the burden shifts back again to the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination." <u>McDonnell Douglas</u>, 411 U.S. at 804-05.  "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 772 (10th Cir. 1988)(brackets added).  The Tenth Circuit states that a plaintiff can show pretext "'by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" <u>Frappied v. Affinity Gaming Black Hawk, LLC</u>, 966 F.3d 1038, 1059 (10th Cir. 2020)(quoting <u>Garrett v. Hewlett-Packard Co.</u>, 305 F.3d 1210, 1217 (10th Cir. 2002)).  Although

> "[t]he evidence which [a plaintiff] can present in an attempt to establish that [a defendant's] stated reasons are pretextual may take a variety of forms[,]" . . . [a] plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; . . . (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

<u>Iweha v. State of Kan.</u>, 121 F.4th 1208, 1226 (10th Cir. 2024)(first three alterations in <u>Kendrick</u>, 220 F.3d at 1230, remaining alterations in <u>Iweha v. State of Kan.</u> only)(quoting <u>Kendrick</u>, 220 F.3d at 1230).  "A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly situated employees who violated work rules of comparable seriousness."

Kendrick, 220 F.3d at 1230.  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)).  Ordinarily, "'[w]ether two employees are similarly situated [] presents a question of fact for the jury.'"  Riggs, 497 F.3d at 1117 (first alteration in Riggs, and second alteration added)(quoting George v. Leavitt, 407 F.3d 405, 414 (D.C. Cir. 2005)).  At the summary judgment stage, however, "the court must determine whether the plaintiff "'has adduced enough evidence to support a finding that the [other employee] and plaintiff were sufficiently similarly situated to support an inference of discrimination.'"  Riggs, 497 F.3d at 1117 (alteration in Riggs)(quoting Mandell v. Cnty. of Suffolk, 316 F.3d 368, 380 (2d Cir. 2003)).  "Without such evidence, the jury is not entitled to draw an inference of discrimination."  Riggs, 497 F.3d at 1117 (citing EEOC v. Flasher Co., 986 F.2d 1312, 1319-20 (10th Cir. 1992)("Flasher")).  Accordingly, employment discrimination summary judgment motions are not different from summary judgment motions "in any other civil action: the court acts as a gatekeeper, granting judgment as a matter of law unless the plaintiff has adduced relevant and probative evidence sufficient to support a jury verdict in his or her favor." Riggs, 497 F.3d at 1117.

"Evidence tending to show pretext permits an inference that the employer acted for discriminatory reasons."  Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(citing Morgan v. Hilti, Inc., 108 F.3d at 1323).  At the summary judgment stage, "the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff."  Bryant v. Farmers Ins. Exch., 432 F.3d at 1125 (10th Cir. 2005)(citing Simms v. Okla. ex rel. Dept. of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), abrogated on

other grounds by Annett v. Univ. of Kan., 371 F.3d 1233, 1238 (10th Cir. 2004)).  "Thus, once a

plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a

defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for

a discriminatory reason and must deny summary judgment."  Bryant v. Farmers Ins. Exch., 432

F.3d at 1125 (citing Simms v. Okla. ex rel. Dept. of Mental Health and Substance Abuse Servs.,

165 F.3d at 1326).  The Tenth Circuit states that the "mere variety in reasons [for an employee's

termination will] not alone undermine their credibility."  Hare v. Denver Merch. Mart, Inc., 255

F. App'x 298, 305 (10th Cir. 2007)(brackets added).[86]  When, however, the various reasons are not

only different, but mutually inconsistent, the contradictions are sufficient to establish pretext for

the purpose of summary judgment.  See Hare v. Denver Merch. Mart, Inc., 255 F. App'x at 305.

A plaintiff can use the cat's paw or rubber-stamp doctrine to establish that his or her

employer's proffered reason for the employee's termination is pretextual.  See Staub v. Proctor

Hosp., 562 U.S. 411, 415 (2011)(describing the cat's paw doctrine).  This doctrine "derives its

---

[86]Hare v. Denver Merch. Mart, Inc., 255 F. App'x 298, 305 (10th Cir. 2007), is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Hare v. Denver Merch. Mart, Inc. and Hamby v. Associated Cent. for Therapy, 230 F. App'x 772 (10th Cir. 2007), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

- 73 -

name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d 476, 484 (10th Cir. 2006).  "As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none . . . for the cat."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 484.  In employment discrimination cases, the term "refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 484.  The rubber-stamp doctrine "refers to a situation in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 484.  Under these doctrines, the "issue is whether the biased subordinate's discriminatory reports, recommendation, or other action caused the adverse employment action."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 487.  An employer can avoid liability, however, "by conducting an independent investigation of the allegations against an employee."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 488.  "In that event, the employer has taken care not to rely on the say-so of the biased subordinate, and the causal link is defeated [between the allegedly discriminatory workplace statements and the termination decision]."  EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 488.  For a plaintiff to prevail on a cat's paw theory claim, he or she "must show that a biased subordinate's discriminatory reports, recommendations, or other actions caused the adverse employment action."  Hamby v. Associated Cent. for Therapy, 230 F. App'x 772, 780 (10th Cir. 2007).

## LAW REGARDING THE NMHRA

The NMHRA makes it an unlawful discriminatory practice for

an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity[.]

N.M.S.A. § 28-1-7A.  The NMHRA allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies.  See Luboyeski v. Hill, 1994-NMSC-032, ¶ 7, 117 N.M. 380, 383, 872 P.2d 353, 355.  The NMHRA sets out the same standard for establishing wrongful discrimination as Title VII.  See Lobato, 733 F.3d at 1296-97 (holding that, "because we conclude that Lobato has no Title VII claim, we also conclude he has no NMHRA claim"); Orr v. City of Albuquerque, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005)("Plaintiffs' burden under the NMHRA is identical to their burden under Title VII.").  The NMHRA requires an individual to first exhaust his or her administrative remedies before bringing a lawsuit.  See Luboyeski v. Hill, 1994-NMSC-032, ¶ 7, 117 N.M. at 383, 872 P.2d at 355; Bates v. N.M. Corr. Dep't, No. CIV 08-1013, 2010 WL 4339367, at *7 (D.N.M. Sept. 30, 2010)(Browning, J.)("NMHRA claims must be administratively exhausted before being brought in federal court.").  The NMHRA provides:

A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the [New Mexico Human Rights] commission's order.

N.M.S.A. § 28-1-13A.

The Supreme Court of New Mexico applies the McDonnell Douglas framework "[w]hen considering a violation of the NMHRA."  Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 139 N.M. 12, 15, 127 P.3d 548, 551.  The Supreme Court of New Mexico states that, "when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA.  'Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own.'" Ocana v. Am. Furniture Co., 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (quoting Smith v. FDC Corp., 1990-NMSC-020, ¶ 9, 109 N.M. 514, 517, 787 P.2d 433, 436)(citing Gonzales v. N.M. Dep't of Health, 2000-NMSC-029, ¶ 20, 129 N.M. 586, 11 P.3d 550)("Smith").  "[C]laims of age, race, national origin, gender discrimination, and retaliation are all subject to the burden shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green." Gamez v. Country Cottage Care and Rehab., 377 F. Supp. 2d 1103, 1119 (D.N.M. 2005)(Browning, J.)(citing McDonnell Douglas, 411 U.S. at 802-804).  The Supreme Court of New Mexico states that the framework it applies to discrimination claims under the NMHRA is as follows: "[A]n employee bears the initial burden of demonstrating a prima facie case of discrimination, which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action.  The employee then has the opportunity to rebut the employer's proffered reason as pretextual or otherwise inadequate."  Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 139 N.M. at 15, 127 P.3d at 551 (citing McDonnell Douglas, 411 U.S. at 802-05).  This approach is the same as the McDonnell Douglas framework.  Moreover, the Supreme Court of New Mexico holds that the protected age class under the NMHRA is the same as the protected class under the federal Age Discrimination in Employment Act, 29 U.S.C.

§ 631(a).  See Cates v. Regents of N.M. Inst. of Min. & Tech., 1998-NMSC-002, ¶ 18, 124 N.M.

633, 638, 954 P.2d 65, 70 (citing 29 U.S.C. § 631(a)).

While New Mexico uses federal law to interpret the NMHRA, there may be two ways in

which the NMHRA is broader than federal law:  First, as the Court has acknowledged previously,

the Supreme Court of New Mexico allows for personal liability under the NMHRA.  See Duprey

v. Twelfth Judicial Dist. Court, No. CIV 08-0756 JB, 2009 WL 2482170, at *7 (D.N.M. July 28,

2009)(Browning, J.).  The NMHRA defines "employer" as "any person employing four or more

persons and any person acting for an employer."  N.M.S.A. § 28-1-2B.  While acknowledging that

there is generally no personal liability under Title VII, the Supreme Court of New Mexico has

"reject[ed] the proposition that there can exist no individual liability under the NMHRA."  Sonntag

v. Shaw, 2001-NMSC-015, ¶ 13, 130 N.M. 238, 243, 22 P.3d 1188, 1193.  In Sonntag v. Shaw, a

defendant relies on Title VII case law to argue that employees cannot sue a corporation's owner

in the owner's individual capacity under the NMHRA.  See Sonntag v. Shaw, 2001-NMSC-015, ¶

13, 130 N.M. at 243, 22 P.3d at 1193.  Although it holds that the defendant could not be held

personally liable, given that the plaintiff had failed to exhaust administrative remedies, the

Supreme Court of New Mexico declines to close the door on individual liability under the

NMHRA.  See Sonntag v. Shaw, 2001-NMSC-015, ¶ 13, 130 N.M. at 243, 22 P.3d at 1193.  The

Supreme Court of New Mexico notes:

> [T]his Court has acknowledged the possibility of individual liability for
> discrimination claims.  Cf. Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353,
> 355 (1994)(affirming the dismissal of individual defendants because the plaintiff
> failed to exhaust administrative remedies against them);  Mitchell-Carr v.
> McLendon, 1999-NMSC-025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing Luboyeski).
> As Plaintiff suggests, the potential for individual liability for discrimination claims
> is rooted in the language of the NMHRA itself, which forbids "any person" from
> supporting a discriminatory practice.  Section 28-1-7(i); see N.M.S.A. 1978, § 28-

1-2(A) (1993)(including within its definition of "person" for purposes of the NMHRA, "one or more individuals").

Sonntag v. Shaw, 2001-NMSC-015, ¶ 12, 130 N.M. at 243, 22 P.3d at 1193.  Second, the NMHRA's definition of "serious medical condition," N.M.S.A. § 28-1-7, may be broader in scope than the ADA's definition of disability.  See Clayton v. Pioneer Bank, No. CIV 07-0680 JB/LAM, 2008 WL 5787472, at *17-18 (D.N.M. December 31, 2008)(Browning, J.)(recognizing that, although "the terms 'medical condition' under the NMHRA, and 'disability,' under the ADA, may be interchangeable in some cases[,]" they may not be the same in others).

## ANALYSIS

The Court grants the Motion.  Pursuant to McDonnell Douglas' third step, Sousa has not proffered evidence that tends to establish or show that Chipotle Services' nondiscriminatory reason for firing him -- the presence of cockroaches at one of his stores for several weeks, coupled with four of his stores failing internal company audits' cleanliness standards within a few days of each other -- is pretextual.  See Riggs, 497 F.3d at 1116.   None of Sousa's five pretext arguments successfully demonstrate, as a matter of law, that Chipotle Services' reason for firing him is so weak, implausible, internally inconsistent, incoherent, or self-contradictory that a reasonable factfinder could find it "'unworthy of credence.'"  Riggs, 497 F.3d at 1118 (quoting Rivera v. City & Cnty. of Denver, 365 F.3d 912, 925 (10th Cir. 2004)).   First, a reasonable jury could not conclude that Chipotle Services' reason for firing Sousa is pretextual on the grounds that when Hannan fires Sousa, Hannan hands Sousa two final warning forms.  Riggs, 497 F.3d at 1119 ("Thus, Ms. Riggs must produce evidence from which a reasonable jury could conclude that the reason given by AirTran was a pretext for age discrimination.").   Second, Sousa cannot point to record evidence that tends to show that Chipotle Services treats younger, similarly situated

employees differently.  See Timmerman, 483 F.3d at 1121(citing Flasher, 986 F.2d at 1321).

Third, even though the parties may disagree as to the severity of the UNM location's infestation

from February 2022 to March of 2022, this disagreement is not material to whether Hannan

"honestly believed" his reason for firing Sousa and acted in "good faith" upon that reason.  Riggs,

497 F.3d at 1118-19 (stating that "the relevant inquiry is whether the employer honestly believed

its reasons and acted in good faith upon them.").  Fourth, Chipotle Services' firing of Rodriguez,

another employee over forty, is legally insufficient to give rise to an inference of pretext: First,

firing one other employee over forty is not sufficient evidence of a discriminatory pattern, and

second, Sousa cannot point to evidence that "'eliminates nondiscriminatory explanations for

disparate treatment.'"  Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1198 (10th Cir.

2006)(quoting Furr v. Seagate Tech., Inc., 82 F.3d 980, 987 (10th Cir. 1996)).  Finally, Tenth

Circuit precedent forecloses Sousa's argument that Hannan's alleged disproportionate reaction to

Sousa's challenges with pest and cleanliness issues at his stores evinces pretext, because courts, in

evaluating age discrimination claims, do not sit as a "'super personnel department'" and "ask

whether the employer's reasons were wise, fair, or correct."  Riggs, 497 F.3d at 1119 (quoting

Young v. Dillon Cos., 468 F.3d 1243, 1250 (10th Cir. 2006)).  Instead, "the relevant inquiry is

whether the employer honestly believed its reasons and acted in good faith upon them."  Riggs,

497 F.3d at 1119 (citing Timmerman, 483 F.3d at 1120).

I.    **AT MCDONNELL DOUGLAS STEP ONE, SOUSA MAKES OUT THE PRIMA
      FACIE CASE, AND AT MCDONNELL DOUGLAS STEP TWO, CHIPOTLE
      SERVICES PROVIDES A NON-DISCRIMINATORY REASON FOR FIRING
      HIM.**

The legal issue at the heart of this case is whether Sousa has put forth enough evidence to

survive summary judgment at the third step of McDonnell Douglas, but before turning to that issue,

the Court addresses several preliminary matters.  First, Sousa's only claim is a New Mexico State

law claim.  The Supreme Court for the State of New Mexico evaluates the merits of NMHRA

claims, however, using the <u>McDonnell Douglas</u> framework; moreover, it looks to federal courts'

interpretations of federal employment discrimination law as persuasive authority in applying this

framework.  See <u>Garcia v. Hatch Valley Pub. Schs.</u>, 2018-NMSC-020, ¶ 17, 458 P.3d 378, 384

("<u>Garcia</u>")("In considering the issue, we look for guidance to interpretations of federal

employment discrimination law under Title VII."); <u>Smith</u>, 1990-NMSC-020, ¶ 9, 109 N.M. at 517,

787 P.2d at 436.

Second, the Court addresses the first two steps of the <u>McDonnell Douglas</u> framework.  The

<u>McDonnell Douglas</u> framework comes into play when the plaintiff relies on circumstantial rather

than direct evidence of age discrimination.  See <u>Iweha v. State of Kan.</u>, 121 F.4th at 1225.  Here,

the parties do not dispute that no one at Chipotle Services told Sousa he was being fired because

of his age, and no one at Chipotle Services made any age-related comments to him.  See <u>supra</u>, at

47.  Accordingly, Sousa lacks direct evidence of age discrimination and must prove his case using

circumstantial evidence, pursuant to the <u>McDonnell Douglas</u> framework.  <u>McDonnell Douglas</u>'

first step is the prima facie case; at this step, Sousa must point to evidence tending to show that:

(i) Sousa is a member of a NMHA protected class, meaning, in this age discrimination case, that

he is older than forty; (ii) Sousa is qualified to continue in the position from which Chipotle

Services fired him; (iii) Chipotle Services fired Sousa; and (iv) Chipotle Services filled Sousa's

position with someone who is not a member of the protected class -- here, someone under forty.

See <u>Cates v. Regents of N.M. Inst. of Min. & Tech.</u>, 1998-NMSC-002, ¶ 17, 124 N.M. at 638, 954

P.2d at 70 (first citing <u>Smith</u>, 1990-NMSC-20, ¶ 11, 109 N.M. at 518, 787 P.2d at 437; then citing

Martinez v. Yellow Freight Sys., Inc., 1992-NMSC-015, ¶ 8, 113 N.M. 366, 368, 826 P.2d 962, 964; and then citing Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1998))(setting forth the prima facie case's elements).    Sousa's evidence establishes successfully the prima facie showing.  First, Sousa was fifty-seven when Chipotle fired him.    See supra, at 11 (stating that Sousa was fifty-four in 2019); supra, at 45 (stating that Hannan fired Sousa in 2022).  Second, Sousa is qualified to continue in the position from which Chipotle Services fired him, because by the time Chipotle Services fired him, Sousa had worked in the restaurant industry for over thirty-five years.  See supra, at 11 (stating that Sousa had worked in the restaurant industry for thirty-five years when Chipotle Services hired him).  Third, Chipotle Services fired Sousa.  See supra, at 45.  Finally, Chipotle Services filled Sousa's position with Chaparro, a twenty-eight-year-old woman.  See supra, at 48.

Because Sousa's evidence establishes the prima facie case, the next step in the McDonnell Douglas analysis shifts the burden of production to Chipotle Services to provide "a legitimate, non-discriminatory reason for the adverse employment action."    Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 139 N.M. at 15, 127 P.3d at 551 (citing McDonnell Douglas, 411 U.S. at 802-05).    Chipotle Services satisfies this burden by pointing to evidence tending to establish that Hannan fired Sousa because Hannan decided that continuing to employ Sousa created an unacceptable risk for Chipotle and its customers.  See supra, at 44.  This reason is facially non-discriminatory.  It reflects two related business judgments about the risks that unclean restaurants create for Chipotle Services.  First, unclean restaurants with cockroaches risks the company's profits, because customers may choose to eat elsewhere in order to avoid Chipotle Services' dirty restaurants.  Second, unclean restaurants with cockroaches risk exposing the company to liability,

because if the insects contaminate the restaurants' food, and the contaminated food makes a customer ill, that customer may bring tort claims against Chipotle Services.  Accordingly, Chipotle Services has satisfied its burden under McDonnell Douglas' second step to provide a legitimate, non-discriminatory reason for firing Sousa.  See Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 139 N.M. at 15, 127 P.3d at 551 (citing McDonnell Douglas, 411 U.S. at 802-05).  The Court, therefore, proceeds to McDonnell Douglas step three, which is the case's crux.

## II.    SOUSA CANNOT POINT TO EVIDENCE TENDING TO SHOW THAT CHIPOTLE SERVICES' PROFFERED REASON FOR FIRING HIM IS PRETEXTUAL.

Chipotle Services is entitled to summary judgment, because Sousa cannot point to evidence tending to show that Chipotle Services' proffered reason for firing him is pretextual.  See McDonnell Douglas, 411 U.S. at 804-05; Garcia, 2018-NMSC-020, ¶ 28, 458 P.3d at 384 (quoting Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 139 N.M. at 12, 127 P.3d at 548)(noting that the plaintiff "may offer evidence that the employer's proffered nondiscriminatory reason was 'pretextual or otherwise inadequate.'").  Plaintiffs may make a showing of pretext:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false, see, e.g., Cole [v. Ruidoso Municipal Schools, 43 F.3d 1373, 1380 (10th Cir. 1994)](finding that evidence supporting the conclusion that the defendant's reason for the nonrenewal of plaintiff's employment contract was false was sufficient for the plaintiff to survive summary judgment); (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, see, e.g., Mohammed [v. Callaway, 698 F.2d 395, 400-01 (10th Cir. 1983)](finding that departure from employment criteria set out in job announcement so as to disadvantage minority employee seeking promotion was probative of discrimination);  or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly situated employees who violated work rules of comparable

seriousness.  See Aramburu [v The Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)].

Kendrick, 220 F.3d at 1230 (footnote omitted).  The Court is mindful that, in considering Sousa's pretext arguments, it does not "'sit as a superpersonnel department that second-guesses the company's business decisions.'"  Iweha v. State of Kan., 121 F.4th at 1226 *11 (quoting Frappied, 966 F.3d at 1059).  Instead, the Court considers the facts as they appear to Hannan, the person who makes the decision to fire Sousa.  See Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1261 (10th Cir. 2001)(quoting Kendrick, 200 F.3d at 1231)("When assessing a contention of pretext, we examine the facts 'as they appear to the person making the decision to terminate [the] plaintiff.'").  With these principles in mind, the Court addresses each of Sosua's pretext arguments according to the order in which Sousa presents them in his Response.

### A.    THE FINAL WARNINGS HANNAN PROVIDED TO SOUSA ON THE DAY OF HIS TERMINATION DO NOT TEND TO ESTABLISH PRETEXT.

First, the fact that Hannan handed Sousa two documents labeled "Final Warning" on the same day that Hannan fired Sousa does not tend to establish pretext.  When Hannan fires Sousa, he simultaneously hands Sousa two corrective action forms labeled "Final Warning" and one corrective action form labeled "Termination."  Supra, at 45.  Sousa contends that handing an employee written warnings "concurrent to a termination letter raises major questions as to the legitimacy of [] Sousa's termination."  Response at 19.  Accordingly, Sousa draws two inferences from the concurrent warnings and termination: (i) Chipotle Services "had an implied progressive discipline policy that should have been followed (and wasn't)"; and (ii) Hannan "created false records to protect himself and his unfounded decision to terminate" Sousa.  Response at 19.

If Sousa's progressive-discipline pretext argument is to go to the jury, first, Sousa must

show that Chipotle Services possesses a progressive-discipline policy, and, second, Sousa must show that Chipotle Services does not follow that policy when it dismisses him. See Lobato, 733 F.3d at 1289 (stating these requirements). Sousa cannot point to evidence that tends to establish either of these requirements. A progressive-discipline policy is "a rule that an employee must receive informal discipline such as a verbal warning or a letter before being terminated." Lobato, 733 F.3d at 1289. Sousa's argument falters at this first requirement, because he has not pointed to any evidence -- other than the warnings themselves -- that tends to show Chipotle Services possesses a progressive-discipline policy. See Response at 18-19. The Tenth Circuit has affirmed grants of summary judgment even when the plaintiff presents direct evidence in the form of sworn testimony that a company follows a progressive discipline policy. For example, in Lobato, an employer fires the plaintiff without engaging in progressive discipline, but a middle manager for the employer testifies at a deposition that the employer practices progressive discipline; nonetheless, the Tenth Circuit affirms the district court's grant of summary judgment to the employer. See Lobato, 733 F.3d at 1286, 1290. According to the Tenth Circuit, the middle manager's "deposition testimony falls short of showing that NMED[, the employer,] had an unwritten" progressive-discipline policy, because the testimony was at loggerheads with the employer's written policy stating that the employer could fire the category of employees to which the plaintiff belongs "for any lawful reason." Lobato, 733 F.3d at 1290.

Comparing Sousa's evidence to the plaintiff's evidence in Lobato demonstrates that Sousa's progressive-discipline argument lacks a sound basis in the applicable law. First, Sousa lacks any direct evidence that Chipotle Services has a progressive-discipline policy. In contrast, the middle manager testifies in Lobato that a progressive-discipline policy exists, yet the plaintiff

still loses at summary judgment.  There is no sound reason to reach a different result here, because Sousa's evidence falls short of the losing party's evidence in <u>Lobato</u>: Sousa cannot point to any deposition testimony in which a Chipotle Services manager testifies that Chipotle Services follows an unwritten progressive-discipline policy, let alone one that is mandatory.  Second, Chipotle Services has a written policy, similar to the written policy in <u>Lobato</u>, that expressly disclaims the need for progressive discipline.  The Chipotle Services policy states that, when "a problem is so serious that the first offense warrants termination, the employee may be terminated immediately." Restaurant Handbook at 4.  <u>See</u> <u>supra</u>, at 5 (stating the undisputed fact that "[f]ailure to comply with any of Chipotle's food safety programs and practices is grounds for discipline, including termination").   In sum, Sousa's inability to put forth direct evidence regarding an implied progressive-discipline policy and Chipotle Services' express written policy permitting immediate termination is a combination that falls short of the evidence to which, pursuant to <u>Lobato</u>, a plaintiff must point to show a jury question at the summary judgment stage about a violation of a progressive-discipline policy.   <u>See</u> 733 F.3d at 1291 (quoting <u>Timmerman</u>, 483 F.3d at 1120)(citing <u>Berry v. T-Mobile USA, Inc.</u>, 490 F.3d 1211, 1223 (10th Cir. 2007))("[W]here 'progressive discipline [is] entirely discretionary,' and the employer 'did not ignore any established company policy in its choice of sanction, the failure to implement progressive discipline is not evidence of pretext.'")(alterations in <u>Lobato</u> but not in <u>Timmerman</u>).

### B.    SOUSA CANNOT POINT TO EVIDENCE THAT TENDS TO SHOW THAT HANNAN TREATED SIMILARLY SITUATED YOUNGER EMPLOYEES DIFFERENTLY FROM HOW HANNAN TREATED SOUSA.

Second, Sousa argues that Hannan treated younger, similarly situated employees differently than Sousa, and this different treatment creates a jury question regarding pretext.  This

argument, however, is not persuasive, because the other employees' alleged misconduct is not

"'nearly identical'" to Sousa's, which New Mexico law requires. See Garcia, 2018 NMSC-020, ¶

38, 458 P.3d at 389 (quoting Smith, 1990-NMSC-020, ¶ 11, 109 N.M. at 514, 787 P.2d at

433)(citing Juneau v. Intel Corp., 2006-NMSC-002, ¶ 25, 139 N.M. at 12, 127 P.3d at

548)(applying the NMHRA, and stating: "To the contrary, HVPS's proffered evidence further

demonstrated that Plaintiff did not identify a single employee whose performance was 'nearly

identical' so as to permit an inference of a discriminatory motive."). A plaintiff can show pretext

by pointing to evidence that tends to establish that the defendant "acted contrary to an unwritten

policy or contrary to company practice" when the defendant fired the plaintiff. Kendrick, 220 F.3d

at 1230. Plaintiffs often use comparator evidence to make this argument: they show that the

employer treated the plaintiff differently from other similarly situated employees "who violated

work rules of comparable seriousness." Kendrick, 220 F.3d at 1230. "'Similarly situated

employees are those who deal with the same supervisor and are subject to the same standards

governing performance evaluation and discipline.'" Riggs, 497 F.3d at 1120 (quoting

Timmerman, 483 F.3d at 1120). If a nondiscriminatory motive explains the difference in

treatment, however, the difference in treatment "will not sustain a claim of pretext." Kendrick,

220 F.3d at 1232 (citing Flasher, 986 F.2d at 1320).

The two Chipotle Services employees whom Sousa offers as comparators are Sanchez and

Chaparro. Neither of these employees' alleged policy violations are sufficiently similar to Sousa's

alleged policy violations, however, to survive summary judgment. First, Chaparro are Sousa are

not similarly situated, because the cleanliness problems at Chaparro's restaurants are not as serious

as the cleanliness problems at Sousa's restaurant. Sousa points to only one cleanliness issue at

Chaparro's restaurants as evidence of similarity: the UNM restaurant fails a third-party EcoSure audit after Hannan fires Sousa and Chaparro takes over the restaurant.  See supra, at 48-49.  A single failed food safety audit does not establish that Chaparro violates work rules of comparable seriousness, especially given that the record contains no information linking the failed EcoSure audit to pest problems, specifically.  In contrast, the parties do not dispute that: (i) there are cockroaches at the UNM restaurant between February 8, 2022, and March 17, 2022, while Sousa oversees it, see supra, at 23-48; and (ii) four of Sousa's restaurants fail to pass internal-audit cleanliness standards in a single week, see supra, at 36.  Chaparro's single failed third-party food safety audit -- a problem that, by definition, is tied to a restaurant's cleanliness on a particular day -- is not "nearly identical" to the four internal audits Sousa's restaurants failed, along with a cockroach presence that lasted several weeks at one of his restaurants.  To conclude, therefore, that Chaparro's rule violations are as serious as Sousa's would be inconsistent with Tenth Circuit precedent and New Mexico State precedent that requires a closer match between employees' performance issues.  See Garcia, 2018 NMSC-020, ¶38, 458 P.3d at 389 (concluding that the plaintiff does not identify a comparator employee with "a similar history of documented performance issues").

Second, Sanchez and Sousa are not similarly situated, because Sousa cannot point to evidence showing that four of Sanchez' restaurants failed internal audits' cleanliness standards. While Sousa does not have to "produce evidence of an employee whose performance was a carbon copy" of his own performance, Garcia, 2018 NMSC-020, ¶33, 458 P.3d at 388-89 (citing Young v. United Parcel Serv., Inc., 575 U.S. 206 (2015)), the way in which both New Mexico State and federal cases applying the McDonnell Douglas framework examine the record in detail to

determine whether two employees are similarly situated reinforces the notion that the nearly identical standard is demanding. To illustrate the level of similarity courts require, the Court considers the Supreme Court of New Mexico's decision in <u>Garcia</u>, and the Tenth Circuit's decision in <u>Kendrick</u>. In <u>Garcia</u>, a bus driver's employer fires her, and the bus driver brings a NMHRA race-discrimination claim, alleging that her employer treats her less favorably than her Hispanic coworkers. See <u>Garcia</u>, 2018-NMSC-020, ¶ 4, 458 P.3d at 381. Her employer asserts that the bus driver lost her job because she "'Met Competency' in only five of the eleven" evaluated areas, and she had a history of at least six documented performance-related incidents. <u>Garcia</u>, 2018-NMSC-020, ¶¶ 35-36, 458 P.3d at 388. In upholding the district court's summary judgment award to the employer, the Supreme Court of New Mexico notes that, while the bus driver points to evidence that shows some "unequal treatment" regarding "enforcement of post-accident testing and suspension policies," the bus driver does not point to evidence that "purported to show that one or more Hispanic employees' performance was 'nearly identical' to Plaintiff's performance as a whole." <u>Garcia</u>, 2018-NMSC-020, ¶ 32, 458 P.3d at 387 (quoting <u>Smith</u>, 1990-NMSC-020, ¶ 11, 109 N.M. at 518, 787 P.2d at 437).

Similarly, in <u>Kendrick</u>, a Black truck driver's employer fires him after the truck driver swears at his supervisor and bumps the supervisor with his chest. See 220 F.3d at 1223. In the truck driver's subsequent race-discrimination lawsuit, to demonstrate pretext at <u>McDonnell Douglas</u>' third step, he offers evidence that his employer did not fire another driver who threatens someone with a crowbar, and, during a discussion about the crowbar threat with his supervisor, storms out of the room, reenters, and states to the supervisor, "'see you later,'" while pointing at the supervisor. <u>Kendrick</u>, 220 F.3d at 1233. While the Tenth Circuit acknowledges that the

employer's treatment of the plaintiff and the other driver "is close enough to be comparable," the Tenth Circuit declares that "their circumstances were nonetheless different in significant respects," including that the plaintiff "actually had physical contact with the person he was threatening," while the other driver did not. Kendrick, 220 F.3d at 1233. The Tenth Circuit states: "[W]e are reluctant to require Penske[, the employer], to view Kendrick and Taylor's actions as equally unacceptable. A company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct." 220 F.3d at 1233 (alterations added). Accordingly, the Tenth Circuit affirms the district court's grant of summary judgment for the employer. See 220 F.3d at 1234.

With these cases in mind, the Court turns to the alleged cleanliness problems at Sanchez' restaurants and asks whether they constitute policy violations that are as serious as Sousa's alleged policy violations. Keeping in mind the undisputed fact that pest problems are common in the restaurant industry, see supra, at 7, only one of Sanchez' restaurants, Store 898, has a pest problem that is similar to Sousa's restaurants' problems. As an initial matter, the record evidence regarding the problems at Sanchez' other four restaurants, 1684, 1726, 1767, and 923, shows that these restaurants' problems are too different from Sousa's restaurants' problems to characterize their cleanliness issues as violations of "work rules of comparable seriousness." Timmerman, 483 F.3d at 1120. At Store 1684, a single rat enters the store through holes in the roof; at Store 1726, an employee submits a work order after a cockroach sighting; at Store 1767, Orkin observes cockroaches in October, but none in November; and at Store 923, Amy observes fruit flies and a "handful" of roaches. See supra, at 52. First, Store 1684's rat in the roof presents a different problem than cockroaches on the floor; the appropriate points of comparison between Sousa and

Sanchez needs to be bugs and audits, and not rodents.  Second, regarding Stores 1726, 1767, and 923, Sousa has not pointed to evidence from which a jury could conclude that the bug presence in either of those restaurants is similar in duration to the UNM restaurant's weeks-long cockroach problem.  As all parties agree, pest sightings are common throughout the restaurant industry.  See supra, at 7.  Accordingly, evidence that cockroaches entered Sanchez' restaurants at one point in time, without any information about how long they remained, cannot demonstrate that Sanchez and Sousa are similarly situated.  For example, consider Store 1767's cockroach problems: while Orkin's pest-control records indicate that cockroaches are present in the restaurant on October 12, 2021, see supra, at 52, the pest-control inspector does not observe any cockroaches in the restaurant the following month, see supra, at 52.  In contrast, it is undisputed that Hannan observes dozens of cockroaches at the UNM restaurant on February 9, 2022, and observes at least six cockroaches when he visits the UNM restaurant on March 17, 2022.  The bugs' presence from one month to the next distinguishes the problem at Sousa's UNM restaurant from a one-time sighting.

The only evidence that tends to establish a month-to-month pest problem at one of Sanchez' restaurants relates to pests at Store 898.  This restaurant had "constant" pest control issues: Amy personally observes ants, cockroaches, and crickets.  See supra, at 42.  If the UNM restaurant's cockroaches were Sousa's only cleanliness problem, this evidence about Sanchez' Store 898 would create a fact issue for the jury.  The jury would have to juxtapose Sanchez' oversight of a store with "constant" pest issues with Sousa's restaurant's weeks-long cockroach presence and determine whether they are rule violations of comparable seriousness.  The problem, for Sousa's case, however, is that Sousa's cockroach problem at the UNM restaurant is not his only company policy violation: four of his restaurants, including the UNM restaurant, fail to meet

internal audits' cleanliness standards in the span of one week.  See supra, at 36-37.  In contrast, Sousa has not produced evidence tending to show failed audits at Sanchez' stores.  Sousa's inability to do so causes his comparator evidence to fall short as a matter of law.

The mode of analysis in Garcia and Kendrick guides the Court's conclusion here.  These cases demonstrate that both New Mexico State courts and the Tenth Circuit evaluate whether two employees are similarly situated by examining the context of employee's rule violations in granular detail.  In Garcia, the plaintiff had a history of six performance-related incidents, and the Supreme Court of New Mexico affirms the grant of summary judgment to the employer, even though it acknowledges that the plaintiff points to evidence showing unequal enforcement of certain work rules.  See Garcia, 2018-NMSC-020, ¶ 32, 458 P.3d at 387.  In Kendrick, the plaintiff bumps a supervisor with his chest, and the Tenth Circuit affirms summary judgment to the employer, despite the fact that the employer did not fire another employee who threatened someone with a crowbar.  See Kendrick, 220 F.3d at 1233.  In light of these courts' fine distinctions regarding whether two employees are similarly situated, the Court concludes that Sousa's evidence about Sanchez' Store 898 falls short of the mark.  Supervising a restaurant with a persistent pest issue is not the same type of professional problem as supervising four stores that an internal company inspector visits and deems dirty in short succession.  Chipotle Services and Hannan "must be allowed to exercise [their] judgment in determining" whether to treat Sousa's problems -- persistent cockroach problems and four failed internal audits in a week's time -- differently from Sanchez' problems -- isolated pest sightings and one persistently dirty store. Kendrick, 220 F.3d at 1233.

The timing of Hannan's decision to fire Sousa reinforces the notion that the failed audits

are the straw that breaks the camel's back: Hannan visits the UNM restaurant on March 17, 2022, and sees several cockroaches, but he does not fire Sousa until March 28, 2022, eleven days later, after the series of failed audits.  See supra, at 29-45.  The Court considers the facts regarding Sousa's performance as they appear to Hannan, who is the person who decides to fire Sousa.  See Selenke v. Med. Imaging of Colo., 248 F.3d at 1261 (quoting Kendrick, 200 F.3d at 1231)("When assessing a contention of pretext, we examine the facts 'as they appear to the person making the decision to terminate [the] plaintiff.'").  To allow this case to proceed to trial on a pretext theory based on Hannan's treatment of Sanchez compared to Hannan's treatment of Sousa would substitute the Court's judgment about the significance and consequences of Sousa's multiple failed audits for Hannan's.  Substituting the Court's judgment for Hannan's would break with New Mexico State precedent and Tenth Circuit precedent that emphasizes the employer's business judgment, and insists that a jury may only draw a pretext inference from two highly similar employees treated differently.  Accordingly, the Court concludes that Sousa has not pointed to evidence that tends to establish that Chaparro, Sanchez, or any other Chipotle Services employee, is similarly situated to Sousa.

### C.    THE EXACT NUMBER OF COCKROACHES AT THE UNM STORE IS NOT A FACT DISPUTE ABOUT PRETEXT THAT REQUIRES THE CASE TO GO TO A JURY.

Third, Sousa makes a cursory argument that, because there are "multiple issues of fact regarding the degree of the pest issue at the UNM store; the length of time it persisted; and the overall cleanliness of Mr. Sousa's stores," the case should go to a jury to determine whether "the reasons for Mr. Sousa's termination were true, or whether they were exaggerated and/or falsified in an effort to justify Mr. Sousa's unlawful termination."  Response at 20.  Sousa cites no legal

authority in this section of his Response, and he makes little attempt to develop his argument beyond the quoted assertions. The undisputed facts show that, when Hannan visits the UNM restaurant on February 9, 2022, he sees dozens of cockroaches, and considers the restaurants' condition to fall significantly below Chipotle Services' cleanliness standards. See supra, at 27. Over a month later, Hannan returns to the UNM store on March 17, 2022, and sees at least six cockroaches. See supra, at 29-30. Finally, four of Sousa's restaurants fail internal audits' cleanliness standards the following week. See supra, at 36. Consequently, Hannan decides that continuing to employ Sousa creates an unacceptable risk for Chipotle and its customers. See supra, at 44. Hannan's decision is not "so fishy and suspicious that a jury could find that" Hannan "lacks all credibility." Lobato, 733 F.3d at 1289. The "'relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.'" Lobato, 733 F.3d at 1289 (quoting Luster v. Vilsack, 667 F.3d 1089, 1092 (10th Cir. 2011)). While it is undisputed that the pest issue improves by March 21, 2022, see supra, at 41, it is also undisputed that Hannan sees multiple cockroaches in the store on two occasions, when he visits the store several weeks apart. Accordingly, there is no fact issue about pretext for the jury to resolve, because the cockroach presence's timespan is undisputed, and the Court will not second guess Hannan's business judgment about that timespan's consequences. See Young v. Dillon Co.'s, Inc., 468 F.3d 1243, 1250 (10th Cir. 2006)(citing Jones v. Barnhart, 349 F.3d 1260, 1267 (10th Cir. 2004))(stating that the court's role "is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments").

D. **HANNAN'S TERMINATION OF SOUSA AND RODRIGUEZ WITHIN TWO MONTHS OF EACH OTHER DOES NOT ILLUSTRATE A PATTERN OF DISCRIMINATORY INTENT THAT CREATES A FACT ISSUE REGARDING PRETEXT.**

Fourth, Sousa asserts that Hannan's firing of "his only two employees over the age of fifty," Rodriguez and Sousa, is "indicative of pretext," because it "illustrates a pattern of discriminatory intent." Response at 20. The record evidence does not support this argument. First, it is not legally sound, because the NMHRA's protected age class is individuals who are forty or older, and are not individuals who are fifty or older. See Cates v. Regents of N.M. Inst. of Min. & Tech., 1998-NMSC-002, ¶ 18, 124 N.M. 633 at 638, 954 P.2d 65 at 70 ("We hold that 40 years old marks the minimum age in the protected age class in cases of employment discrimination under the [NMHRA.]"). Sousa's focus on Rodriguez' and Sousa's terminations, therefore, overlooks the undisputed facts that Hannan managed seven Field Leaders during the time period that Sousa worked for Hannan and that at least four of these Field Leaders, including Sousa, were over the age of forty. See supra at 12-13. Accordingly, when Hannan fires Rodriguez and Sousa, he does not eliminate all members of the NMHRA's protected class from his team of Field Leaders. Instead, Sousa seeks to establish a pattern based on Hannan's firing of two employees, alone, and he cites no legal authority supporting the notion that a sample size of two is sufficient to send a case to a jury on a pattern-of-discrimination pretext theory.

In support of his pattern-of-discrimination theory, Sousa cites to Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir. 1996), in which the Tenth Circuit reverses a grant of summary judgment to the defendant. In that case, however, "eight top-level executives over the age of 50 were replaced by younger persons"; the replacements occur, moreover, after a new chief executive officer ("CEO") takes charge of the defendant-employer, leading the court to conclude that,

"[c]ombined with [the plaintiff,] Greene's[,] testimony that Burd[, the CEO], was willing to 'do [him] the favor of letting [him] resign,'" a jury could infer "that with Burd's ascendancy, there was a high-level effort that caused these retirements or resignations and that age was 'a' determining factor." 98 F.3d at 560 (first three brackets added, fourth and fifth brackets in Greene v. Safeway Stores, Inc.). Greene's facts are not similar to this case's facts. The number of older employees that depart in Greene is greater, and the reasons for their departure are not tied to performance. Here, Chipotle Services fires two older employees who both struggled with insect problems at their restaurants. Greene does not advance, therefore, Sousa's pattern-of-discrimination theory.

Sousa also cites to Bingman v. Natkin & Co., 937 F.2d 553 (10th Cir. 1991)("Bingman"), for the proposition that evidence showing that the employer terminated two other employees over sixty in the two years after the employer fired the plaintiff is relevant in an age-discrimination case. 937 F.2d at 557. Bingman is inapposite, however, because it analyzes a reduction-in-force (layoff) age discrimination claim. In a reduction-in-force age discrimination case, the employer's rationale for terminating the plaintiff is economic. Accordingly, the pretext analysis in these cases focuses on how the employer implements the reduction in force. In Bingman, the parties stipulated that the employer, a mechanical contractor, "had an economic need to reduce" the number of workers it employed in its warehouse by three people. Bingman, 937 F.2d at 556. The employer presented evidence that the reduction in force eliminated the plaintiff's job altogether, but the plaintiff presented evidence that the "plaintiff's job had been taken over and assumed by younger men with less seniority." Bingman, 937 F.2d at 556. The trial court also admitted evidence that two subsequent reductions in force eliminated the positions of two older employees, and left intact

the positions of three employees in their early thirties.  See Bingman, 937 F.2d at 556.

The pattern of layoffs in Bingman bears little resemblance to the circumstances in which Sousa and Rodriguez lost their jobs.   The Bingman employer did not fire the older employees because of their violation of company policies; instead, it selected several positions for elimination based on economic need.  See Bingman, 937 F.2d at 556.  If Chipotle Services had decided that it needed to lay off two field leaders as part of an economically motivated downsizing, and the only two field leaders that lost their jobs were older than forty, Bingman would be an instructive precedent.  The situation is different here: Chipotle Services asserts that it fired Rodriguez for her inability to mitigate or preempt a full-blown infestation in her restaurant involving thousands of cockroaches.  See supra, at 19.   It follows that for Sousa to defeat summary judgment, he has to bring forth evidence that rules out a nondiscriminatory explanation for why Chipotle Services fired Rodriguez.  See Timmerman, 483 F.3d at 1115 (quoting Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991))("At the very least, in order to create an inference of pretext, 'a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals.'")  Sousa cannot make this showing.  It is undisputed that Rodriguez' pest issue was orders of magnitude more severe than Sousa's pest issues:  Chipotle Services had to replace machinery in her restaurant that the cockroaches overran.  See supra, at 19.  An infestation this severe is too unusual to serve as the valid basis for a pretext inference.  Chipotle Services made a business decision to fire Rodriguez because cockroaches took over her restaurant.  Sousa cannot point to that decision as a reason to take his case to a jury when he offers no evidence tending to show Rodriguez' firing was a sham.

E.    SOUSA'S CASE CANNOT SURVIVE SUMMARY JUDGMENT BY
      ARGUING THAT SOUSA'S TERMINATION WAS DISPROPORTIONATE
      TO HIS ALLEGED INFRACTION.

Sousa's fifth and final argument is that the "extreme sanction of termination, in the context of Mr. Sousa's employment history, creates an issue of fact regarding pretext."  Response at 21.  In support of this assertion, Sousa argues that it "did not make logical sense, from a business perspective, to terminate such a high-performing employee for an isolated incident."  Response at 21.  This argument is a non-starter when it comes to establishing pretext at the summary judgment stage.  Courts "do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment."  Riggs, 497 F.3d at 1119 (citing Piercy v. Maketa, 480 F.3d 1192, 1200 (10th Cir. 2007)).  It does not matter whether Hannan's reasons for firing Sousa are "wise, fair, or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them."  Riggs, 497 F.3d at 1118-19 (citing Timmerman, 483 F.3d at 1120).  Hannan's decision to fire Sousa does not need to make logical sense or to satisfy an objective reasonableness standard.  See Flasher, 986 F.2d at 1319 ("Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal.")(emphasis in original).  The Tenth Circuit makes it clear, moreover, that Sousa's history of strong performance reviews adds little to his pretext argument.  "Put simply, 'prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual.  To hold otherwise would be to hold that things never change, a proposition clearly without basis in reality.'"  Roberts v. IBM, 733 F.3d 1306, 1309 (10th Cir. 2013)(quoting Billet v. CIGNA Corp., 940 F.2d 812, 826 (3d Cir. 1991), overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)).  Accordingly, Sousa's claim cannot survive summary

Case 1:23-cv-00811-JB-JFR    Document 92    Filed 01/10/25    Page 98 of 99

judgment on the grounds that the sanction Hannan imposes is too harsh in light of Sousa's prior history of good performance.

## III.    THE COURT DENIES THE SCHEDULING MOTION AND THE DISCOVERY MOTION.

The Court denies the Scheduling Motion and denies the Discovery Motion.   At the June 26, 2024, hearing, the Court denies the Scheduling Motion on the grounds that it would be premature to extend case deadlines over Sousa's objection.  See Draft Transcript of Hearing at 3:16-25 (taken June 26, 2024)(Court)("June Draft Tr.").  The Court also denies the Discovery Motion; the Court instructs Chipotle Services to ensure that it has produced all Orkin records from Sanchez' stores, see June Draft Tr. at 14:13-24 (Court), and states that the Court hopes that Chipotle Services' confirmation about the records will address Sousa's request to depose Sanchez after the close of discovery.  See June Draft Tr. at 16:20-25 (Court).

IT IS ORDERED that: (i) the Defendant's Motion for Summary Judgment and Supporting Memorandum of Law, filed June 17, 2024 (Doc. 64), is granted; (ii) the Defendant's Opposed Motion to Amend Supplemental Scheduling Order, filed May 28, 2024 (Doc. 55), is denied; (iii) the Plaintiff's Motion to Compel Discovery and Extend Discovery Deadline to Conduct Limited Discovery, filed June 7, 2024 (Doc. 60), is denied; (iv) the Plaintiff's First Amended Complaint for Violations of the New Mexico Human Rights Act, filed December 4, 2023 (Doc. 23), is dismissed with prejudice; (v) all of the Plaintiff's claims against the Defendant are dismissed with prejudice; (vi) the case is dismissed with prejudice; and (vii) the Court will enter a separate Final Judgment disposing of this case.

_____
UNITED STATES DISTRICT JUDGE

- 98 -

*Counsel:*

Alexandra W. Jones
Jones Law LLC
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Carlos M. Quinones
Quinones Law Firm LLC
Santa Fe, New Mexico

 --and--

Betsy Bulat
Maya Simone Marshall
Martenson Hasbrouck & Simon LLP
Atlanta, Georgia

     *Attorneys for the Defendant*